No. 83–6173. HAMILTON *v.* ZANT, SUPERINTENDENT, GEORGIA DIAGNOSTIC AND CLASSIFICATION CENTER. Sup. Ct. Ga. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Petitioner, Roland Paul Hamilton, and his friend, Billie Jean Rose, met John Shinall at a bar one evening, took a few drinks and accompanied Shinall to another bar. Later, Shinall suggested that they go to his house to eat, rest, and watch television before visiting more bars. Shinall died from injuries he suffered during this layover at his home. The State's theory was that petitioner went to Shinall's home with the intention of robbing him and killed him in the process. Petitioner claimed that he struck Shinall in order to prevent him from raping Rose and that Rose, too, participated in subduing Shinall by hitting him over the head with a bottle. According to petitioner, he robbed Shinall only as an

afterthought and without knowledge that Shinall's injuries were fatal.

Armed with Rose as its leading witness, the prosecution succeeded in convincing the jury to convict petitioner of felony murder. After a sentencing trial, the jury found that the murder was accompanied by two aggravating circumstances[1] and condemned petitioner to death. On direct appeal to the Georgia Supreme Court, his conviction and sentence were affirmed. *Hamilton* v. *State*, 244 Ga. 145, 259 S. E. 2d 81 (1979). This Court vacated the sentence and remanded the case for reconsideration in light of *Godfrey* v. *Georgia*, 446 U. S. 420 (1980). 446 U. S. 961 (1980). On remand, the Georgia Supreme Court reaffirmed the imposition of the death sentence. *Hamilton* v. *State*, 246 Ga. 264, 271 S. E. 2d 173 (1980). This Court then denied a writ of certiorari. 449 U. S. 1103 (1981).

Petitioner next sought habeas corpus relief in the Superior Court of Butts County, Ga., claiming that at both the guilt-innocence and sentencing phases of his trial he had been denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. The Superior Court granted a new trial to petitioner based upon evidence produced at five hearings over a span of 18 months.[2] The Supe-

---

[1] Pursuant to Ga. Code Ann. §§ 17–10–30(b)(2) and 17–10–30(b)(7) (1982), the jury found that the murder was "outrageously or wantonly vile, horrible, or inhuman, in that it involved torture, depravity of mind, or an aggravated battery to the victim" and that the murder "was committed while the offender was engaged in the commission of another capital felony." Pet. for Cert. 5

[2] The Georgia Supreme Court held that the Superior Court's findings were supported by the evidence, 251 Ga. 553, 307 S. E. 2d 667 (1983), and summarized those findings as follows:

"[T]hat although counsel knew only four or five members of the traverse jury panel, he questioned only three jurors on voir-dire examination, and only as to a matter unrelated to capital punishment; that he made no application for investigative funds and conducted no independent investigation; that no witnesses were personally interviewed prior to their testimony; that the autopsy report and other expert medical evidence revealed that two types of wounds, stabbing and tearing, were inflicted upon the deceased; that this supported Hamilton's statement that Billie Jean Rose hit the victim on the head with a bottle; however, defense counsel failed to cross-examine Billie Jean Rose concerning this; that the deceased had a known propensity for violence, which was not investigated; that there was no investigation of grounds on which Billie Jean Rose's testimony and her credibility could have been impeached; that there was no investigation of a prior criminal conviction entered against

rior Court's meticulous review of the pertinent facts revealed that petitioner had been represented by a court-appointed counsel, John F. M. Ranitz, Jr., whose handling of the case fell far below constitutional standards. Counsel failed to pursue *any* independent, pretrial investigation on petitioner's behalf, neglecting even to interview key witnesses. For example, according to the Superior Court, there were elements in the testimony of the medical examiner that corroborated petitioner's account of the killing. Yet, after having failed to interview the medical examiner prior to trial, counsel displayed incompetence during the trial by failing to bring those corroborative facts before the jury.

Counsel's handling of Billie Jean Rose was even more indicative of his inadequate representation. Although he knew prior to trial that the credibility of Rose's testimony against petitioner would constitute a crucial, if not decisive, part of the case, defense counsel failed to investigate whether there were aspects of her background that could serve to impeach her. Nor did he seek to require the State to disclose that it had agreed not to prosecute Rose for her part in the events that led to the victim's death.

Similarly egregious was counsel's failure to develop possibly exculpatory evidence involving the victim's propensity for violence. According to the Superior Court, the victim's relationship with his common-law wife had been "stormy, even violent." Exhibit C, App. to Pet. for Cert. 8. Petitioner's defense relied in large part upon establishing the victim's propensity for violence. Yet at trial counsel failed to inquire into the victim's relationship with his wife.

This pattern of indifference and incompetence continued into the sentencing phase of the trial. In the words of Judge Etheridge of the Superior Court: "The sentencing phase is stark. There exists only the briefest speech on Paul Hamilton's behalf, and no evidence whatever." *Id.*, at 10. According to Judge Etheridge, counsel "had done nothing to attempt to discover evidence that might have afforded the jury a basis for sparing his client's life. Nothing was presented in evidence as a basis for mercy." *Id.*, at

---

Hamilton when he was 18 years of age, even though defense counsel knew that this would be offered against Hamilton if he was convicted; that no member of Hamilton's family was contacted prior to trial, even though they could have given evidence in mitigation; and that the state had an agreement not to prosecute Billie Jean Rose, which defense counsel did not require the state to disclose." *Id.*, at 554, 307 S. E. 2d, at 688.

11. To put the utter worthlessness of counsel's representation in proper perspective, it should be noted that at the evidentiary hearing that accompanied the habeas corpus proceeding, petitioner's mother testified that she had never been asked to testify on her son's behalf; prior to trial, defense counsel failed to contact any member of his client's family.

On appeal, the Georgia Supreme Court affirmed in part and reversed in part. 251 Ga. 553, 307 S. E. 2d 667 (1983). It affirmed the reversal of the death sentence, concluding that petitioner had been denied effective assistance of counsel at the sentencing phase of the trial. However it reversed the Superior Court's order for a new trial, holding that petitioner had not been denied effective assistance at the guilt-innocence stage of his trial because he had not been prejudiced by his attorney's deficient performance. In the court's view, petitioner had not been prejudiced because the evidence led "inexorably to the conclusion that he is guilty of murder." *Id.*, at 555, 307 S. E. 2d, at 669.

This Court should grant a writ of certiorari to review that part of the Georgia Supreme Court's judgment reversing the order for a new trial because it is clear from the record that defense counsel's substandard performance utterly deprived petitioner of effective assistance of counsel at *both* phases of his trial. In *Strickland* v. *Washington, ante,* p. 668, this Court today holds that in order to successfully advance an ineffective-assistance claim a defendant must show that his attorney's performance fell below constitutional standards and that the deficient performance actually prejudiced his defense. To meet the prejudice prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ante,* at 694. In this case, there exists a reasonable probability that the outcome would have been different but for the substandard performance of petitioner's counsel.[3] Had counsel sought to impeach the prosecution's main witness, had he sought from the medical examiner favorable testimony that was later elicited at the habeas corpus hearing, had

---

[3] I continue to disagree with the Court's analysis in *Strickland.* See *ante,* at 710, 712 (MARSHALL, J., dissenting). The point here is that petitioner is entitled to a new trial even under the unduly burdensome test imposed upon defendants by *Strickland.*

he brought before the jury the victim's propensity towards violence—in short, had defense counsel functioned anywhere within the range of professional conduct expected of attorneys—it is indeed reasonably probable that the jury would have found petitioner guilty of something less serious than capital murder.

Counsel for petitioner displayed the same pattern of incompetence at both the guilt-innocence and sentencing phases of his trial. Yet the Georgia Supreme Court, while willing to recognize that counsel's derelictions prejudiced the defendant at the sentencing phase of the trial, was unwilling to recoginize prejudice at the guilt-innocence phase. One expects a court to justify such differences in result, but the Georgia Supreme Court offered no explanation whatever for its divergent conclusions. It simply dictated a holding that suspiciously resembles an arbitrary, ad hoc compromise—one that appears to have traded the vacation of a death sentence for the reinstatement of a murder conviction. Splitting the loaf in two may constitute justice under certain conditions. However, in cases such as the one at bar, such compromise flies in the face of constitutional demands we are not at liberty to ignore. I therefore dissent from the Court's denial of this petition for a writ of certiorari.