UNITED STATES of America, Appellee,

v.

Joseph Albert PELLETIER,
Defendant, Appellant.

No. 86–1759.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1988.
Decided May 5, 1988.

Wendy P. Solovay with whom Newman & Newman, P.C. were on brief for defendant, appellant.

Margaret D. McGaughey, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., Joseph H. Groff III, and Nicholas M.

Gess, Asst. U.S. Attys., Portland, Me., were on brief for appellee.

Before BOWNES, ALDRICH and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Pelletier seeks reversal of a conviction resulting from a four-count indictment for violation of federal narcotics law. We affirm the conviction.

In November 1985, John Fulstone, a security officer at the Naval Air Station at Brunswick, Maine, who was posing as a drug user and dealer, bought varying amounts of cocaine from Charles Strickler whose source was, purportedly, the appellant. In at least one of the transactions, Strickler was assisted by Lester Morse. At trial, both Strickler and Morse identified appellant as their cocaine source. Fulstone never had direct contact with appellant.

Appellant raises various and varied issues in the discussion of which we will outline the remaining relevant facts.

### I. *Coconspirator Statements*

■ Appellant first challenges the court's decision to admit, as coconspirator hearsay statements, officer Fulstone's testimony about a statement by Strickler identifying appellant as his source. Fulstone testified that Strickler stated that his cocaine source was "Fred" or "Freddy," Pelletier's nickname.

■ Conconspirator hearsay statements are admissible upon a finding, by a preponderance of the evidence, that a conspiracy existed at the time the statement was made and that the statement was made in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E); *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir.1977). Appellant asserts there was insufficient evidence to support the court's finding that a conspiracy existed. He argues, first, that the government provided no direct evidence regarding the meeting of the minds with respect to planned criminal activity. However, circumstantial evidence of an agreement can be sufficient to show a common plan or purpose. *United States v. Hensel*,

699 F.2d 18, 33 (1st Cir.1983). Such evidence was provided by the testimony of both Strickler and Morse, who described an on-going cocaine retailing enterprise in which they and appellant participated. The court's finding that the conspiracy existed was, therefore, well supported.

Appellant argues that their testimony was inherently unbelievable because of substantial ambiguities and inconsistencies. The inconsistencies and ambiguities Pelletier points out are as follows: Strickler testified that he obtained the cocaine from appellant's "home," yet at the time of the transactions appellant no longer lived there. Morse testified that he did not know the identity of appellant's supplies. Morse also testified that appellant no longer lived in the house where he conducted his business. Reviewing the rest of the testimony, we find these allegations to be insubstantiated. Both Strickler and Morse testified that although Pelletier had to move out of his house because of an asbestos problem, he continued to conduct business from the house. Moreover, when asked about the identity of appellant's suppliers, Morse testified that he had never been present when appellant obtained the drugs, and that he had only heard appellant refer to his source by the place of origin or by some initials.

Both Strickler and Morse testified consistently that both of them made cocaine deliveries for appellant and otherwise acted as his agents or aides. Their testimony was clearly sufficiently credible for the court to find that "it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy." *Petrozziello*, 548 F.2d at 23. Furthermore, the statement was made in furtherance of the conspiracy. The statement explained to Fulstone why Strickler could not fill an order immediately. Statements that identify a fellow conspirator as a source of cocaine, made for the purpose of inducing continuing participation in the conspiracy, are statements made in furtherance of the conspiracy. *United States v.*

*Munson,* 819 F.2d 337, 341 (1st Cir.1987) (citing *United States v. Anderson,* 642 F.2d 281, 285 (9th Cir.1981)). We conclude, therefore, that the evidence was properly admitted.

Appellant further argues that since the government used testimony of appellant's coconspirators to show the nature and the extent of the conspiracy, the court had to caution the jury about the use of such evidence, and cites *United States v. Darland,* 626 F.2d 1235 (5th Cir.1980), *on remand,* 659 F.2d 70 (1981) (while under federal law a conviction can stand even if based wholly or mostly on uncorroborated accomplice testimony, the court should caution the jury about the value of the evidence). The court gave a standard cautionary instruction and the defendant requested no further charge.[1]

In *United States v. Dailey,* 759 F.2d 192 (1st Cir.1985), we held that accomplices can testify against a fellow indictee after reaching an agreement with the government, even when the agreement is contingent on the usefulness of the testimony. The agreements should be read to the jury and made available during its deliberations; defense counsel may cross-examine the accomplices at length about the agreements; and the jury should be given the standard cautionary instruction concerning the testimony of accomplices and a special cautionary instruction concerning the nature of each accomplice's contingent agreement and the risk that it creates, particularly in instances where the accomplice's testimony cannot be corroborated.

*Id.* at 200. The goal of this procedure is to allow the jury to consider both the testimony offered and the factors that may make that testimony less worthy of credence.

The proceedings below satisfied the *Dailey* standard. Both accomplices testified that they had cooperated with the United States. The terms of the plea agreement were presented to the jury. The agreement did not make the government's duty to perform contingent upon the success of the government's case. Defendant's counsel cross-examined both witnesses about their agreement with the government. And, finally, the instruction the court gave alerted the jury to their obligation to scrutinize accomplice testimony closely.

In summary, then, insofar as the testimony was used as proof of the existence of the conspiracy in order to admit the hearsay evidence, it was properly admitted. Insofar as the testimony was offered as evidence relevant for the case in chief, its admission was also proper, given compliance with the safeguards required by *Darland* and *Dailey.* We find no error.

## II. *Statements Made by Appellant*

On April 11, 1986, some six months after the events for which he was indicted, Pelletier was stopped and arrested for driving under the influence of alcohol. After the arrest, while at the police station and without formal *Miranda* warnings,[2] officer

---

1. The court charged the jury as follows:

   The testimony of a person who testifies against the defendant in return for a more lenient treatment or in the hopes of a more lenient treatment in return for use immunity from prosecution or any other personal advantage should be received with caution and weighed by the jury with great care. The jury must determine, in other words, whether the testimony has been effective [sic] by self interest or by prejudice against the defendant. On the other hand, you may believe their testimony beyond a reasonable doubt. In your judgement of the crediblity [sic] of Mr. Strickler and Mr. Morse you may consider—they are known in law as alleged accomplices. An accomplice is one who unites with another person in the commission of a crime voluntarily and with common intent, however, that accomplice does not become independent as a witness because of his participation in the criminal act charged. On the contrary the testimony of one who by his own testimony has admitted that he is an accomplice if you believe as a jury alone may be sufficient weight to sustain a verdict of guilty though it is not corborated [sic] or supported by other evidence. However, as the jury should keep in mind the evidence is to be received with great caution and weighed with great care, and you should not convict a defendant upon the utter support of an accomplice until you believe that testimony.

2. Testimony by officer Young showed that he told Pelletier the substance of the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and that Pelle-

Young had a conversation with appellant regarding the latter's drug activities. Pelletier made several incriminating statements during that conversation. After a suppression hearing the judge declared the April 11 statements admissible over Pelletier's objections that he was given improper *Miranda* warnings and was incompetent to waive his rights due to intoxication. At trial, however, the court declared the April 11 statements inadmissible because their probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Fed.R.Evid. 403; Tr. at 147–48.

Appellant now challenges the court's finding at the suppression hearing. This argument is epitomically moot. The statements were never presented to the jury, therefore no harm could result from the outcome of the suppression hearing.

The next set of challenged statements occurred on April 24, 1986, when appellant was arrested pursuant to a warrant based on an indictment for his November 1985 drug activities. While en route to the police station, defendant stated "I guess Ax [Strickler] and Morse must have gone and testified about my dealings." He also stated that he didn't sell drugs to pregnant women or children. The ride to the station lasted only a few minutes. Only at the station did the officers warn Pelletier of his *Miranda* rights.

At the suppression hearing the court found that the statements were admissible because they were spontaneous, before any questioning or inducement by the agent, and made during a very short car ride. The court also found that the statements were made rationally, intelligently and voluntarily, even though appellant was to some extent intoxicated at the time. These statements were proffered at trial.

■ Pelletier presents two arguments regarding this matter. First, because the statement referring to pregnant women and children was in the present tense he urges the court to find that the statement was irrelevant to transactions allegedly

made some six months earlier. The improper inference that concerns appellant is that if appellant was selling drugs in April, he must have been doing so in November. He therefore contends that the prejudice resulting from the admission outweighs the probative value it may have. However, appellant's characterization of his drug customers amounted to an admission under Fed.R.Evid. 801(d)(2). The court exercised its discretion properly.

■ Furthermore, as to the statement about Pelletier's clients and that about his coconspirators, we see no basis to reverse the court's ruling. Trial judges have broad discretion in applying Rule 403 as a limitation to admissibility of statements offered on some specific ground. *See United States v. Zeuli,* 725 F.2d 813, 816 (1st Cir. 1984). The government avers several proper grounds for admissibility. First, as mentioned above, as an admission, Fed.R. Evid. 801(d)(2), since the statement about his clients could reasonably be interpreted as a reference to the crimes for which he was charged. As to the reference to Strickler and Morse we similarly find no error. At the time he made the statement Pelletier knew why he was arrested; he mentioned the witnesses who were his alleged coconspirators. A second proper ground for admission is that, by referring to his associate Strickler, appellant confirmed the identity of the "Fred" Strickler had mentioned. Fed.R.Evid. 404(b). We therefore find no abuse of discretion in allowing admission of the statements.

■ The second broad challenge to the statements, that suppression was required based on Fifth Amendment grounds because he had not received Miranda warnings, is less worthy of discussion. There is no indication of any interrogation on the part of the arresting officer, nor any kind of police act that was "reasonably likely to evoke an incriminating response from a suspect." *Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). The Fifth Amendment was simply not implicated.

tier knowingly waived his Fifth and Sixth Amendment rights.

### III. *Sufficiency of the Evidence*

Appellant challenges the sufficiency of the evidence from two angles: first, by claiming the judge erred in denying a motion for judgment of acquittal, and secondly by directly questioning the sufficiency of the evidence presented to the jury. In reviewing both lines of argument the standard is the same: we must view the evidence and reasonable inferences from it in the light most favorable to the government and determine whether the government produced sufficient evidence for a finding of guilt beyond a reasonable doubt. *United States v. Tierney,* 760 F.2d 382, 384 (1st Cir.1985).

The evidence presented by the government may be summarized as follows: Strickler testified that on November 7, 8, and 15, 1985, he sold Navy officer Fulstone quantities of cocaine that he had obtained from appellant. Morse testified that the cocaine Strickler sold Fulstone on November 15 came from appellant. Both Strickler and Morse testified that these sales were part of a pattern of cocaine trafficking and that appellant provided the drug for these transactions. At trial, both Strickler and Morse positively identified Pelletier. Officer Fulstone testified that Strickler identified his cocaine source as "Fred"—appellant's nickname. Finally, appellant's statements to the arresting officer agree with the government's description of the facts. We find this evidence is sufficient to support Pelletier's convictions.

### IV. *Other Matters*

Appellant raises three other challenges that deserve little more than summary disposition. First, appellant finds mistake in the court's denial of a motion for grand jury information. Appellant argues that he was harmed in his defense because the court did not compel the government to provide him with transcripts of the coconspirators' testimony before the grand jury. But the record reveals that the government complied with appellant's request by making the transcripts available five days before trial. This argument is frivolous.

Appellant also claims, based on 28 U.S.C. § 1867(b) and (f), that because the district court denied his motion for grand jury information he could not discover whether valid grounds existed to challenge individual grand jurors. However, appellant failed to comply with the procedural requirements of § 1867(a) (papers must be filed within seven days) and (d) (movant must provide affidavit explaining reasons for motions). These procedural flaws are fatal to his argument. Section 1867 provides the exclusive means by which a party may challenge a jury on the ground of procedural irregularities. There was no error in denying the motion.

Appellant's last challenge focuses on the trial counsel's performance. For several reasons appellant argues the assistance of his counsel was so ineffective as to amount to a deprivation of his Sixth Amendment right to counsel. This issue was not raised below, therefore it is not properly before us here. *See, e.g., United States v. Alemañy Rivera,* 781 F.2d 229, 236 (1st Cir.1985) (arguments of sufficiency of the evidence to support a conviction must be raised below). Since the court below did not have a chance to address the Sixth Amendment argument, we see no basis to address it now. We have held before that even constitutional rights may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Sachs,* 679 F.2d 1015, 1018 (1st Cir.1982). We note that in this case instead of finding an absolute waiver, we may consider the Sixth Amendment issue if properly brought after a collateral proceeding. *See United States v. Griffin,* 699 F.2d 1102, 1107–09 (11th Cir. 1983) (concluding that the preferable mechanism to present issue of ineffective assistance of counsel is by proceeding pursuant to 28 U.S.C. § 2255).

We find no basis to overturn the result of the proceedings below.

*Affirmed.*