907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America, Plaintiff-Appellee,
v.
Pablo SANCHEZ-BASTOS, Defendant-Appellant.
 No. 89-2065.
 United States Court of Appeals, Sixth Circuit.
 July 2, 1990.
 
 Before KENNEDY and WELLFORD, Circuit Judges and ENGEL, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Sanchez-Bastos, a Cuban immigrant who arrived in this country in the Mariel boatlift, was arrested by Detroit Police for possession of cocaine. He provided authorities with identification papers that incorrectly reflected that he was Juan Duran, and falsely maintained that he was Juan Duran. INS agent Tim Houghtaling proceeded to interview him. Houghtaling maintains that he warned Sanchez-Bastos of his Miranda rights in Spanish, and that Sanchez-Bastos proceeded to claim that he was Juan Duran. Houghtaling prepared a written statement in Spanish, which Sanchez-Bastos initialed with the letter "J". Houghtaling, either through subsequent investigation (according to the government) or prior knowledge (according to appellant's counsel) arrived at Sanchez-Bastos' true identity.
 
 
 2
 There were two apparent motives for Sanchez-Bastos' desire to hide his true identity: (1) he was on INS parole status (following a state criminal conviction and prison sentence), and any arrest could place him back in INS custody, and/or (2) he had been released on bond pending trial in an Illinois criminal case, had failed to appear at a scheduling conference, and was the target of an arrest warrant in connection with that case.
 
 
 3
 A three-count indictment charged appellant with (1) making a false statement in violation of 18 U.S.C. Sec. 1001, (2) possessing a false identification document with intent to defraud the United States in violation of 18 U.S.C. Sec. 1028(a)(4), and (3) using false identification to satisfy employment verification requirements in violation of 18 U.S.C. Sec. 1546(b). The third count, however, was dismissed on Sanchez-Bastos' motion for judgment of acquittal at the close of the government's case. The jury returned convictions on the remaining two counts.
 
 
 4
 Appellant bases his appeal on claims that he was denied effective assistance of counsel, that he did not knowingly waive his right against self-incrimination and his right to counsel, and that improper and prejudicial remarks were made by the prosecutor and the judge.
 
 I. Ineffective Assistance of Counsel
 
 5
 Claims of ineffective assistance of counsel under the Sixth Amendment will not be considered in the first instance on direct appeal, because the record of the proceedings below will not usually provide a sufficient basis to consider such claims. United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). Appellant may have a colorable claim of ineffective assistance of trial counsel, but the proper procedure is to give the district court an opportunity to consider the matter in the first instance in a post-conviction proceeding under 28 U.S.C. Sec. 2255. See United States v. Hill, 688 F.2d 18, 21 (6th Cir.), cert. denied, 459 U.S. 1074 (1982), and cases cited therein; United States v. Pelletier, 845 F.2d 1126, 1131 (1st Cir.1988). We will not on direct appeal afford such relief.
 
 
 6
 II. "Exculpatory No"
 
 
 7
 In United States v. Steele, 896 F.2d 998 (6th Cir.1990), a divided panel of this court adopted the so-called "exculpatory no" doctrine, which has been approved at least in part by other circuits in holding that under certain circumstances, exculpatory responses to questions posed by government agents may not be prosecuted under 18 U.S.C. Sec. 1001. The doctrine is based in part on self-incrimination considerations, but also purports to take into account congressional intent.
 
 
 8
 In essence, the doctrine provides that, under certain circumstances, the government may not prosecute an individual for false or fraudulent statements which were made in response to questioning initiated by the government where a truthful statement would have incriminated the defendant.
 
 
 9
 Steele, 896 F.2d at 1001.
 
 
 10
 The government has petitioned for en banc review of the Steele decision, and this court has not yet indicated whether it will consider the matter en banc. The "exculpatory no" issue was raised by appellant at the trial level, but it is not entirely clear on the record whether the district court's refusal to apply the doctrine to the facts of this case rested on a conclusion that those facts did not fit the doctrine, or was based instead on the fact that this court had not yet acted to adopt such a principle. Although appellant did not raise the issue initially, we requested supplemental briefs and permitted the issue to be argued in view of Steele.
 
 
 11
 Steele recognizes that the "exculpatory no" doctrine applies only to statements made in connection with investigations that are criminal in nature. "[T]he inquiries which Hall made of Steele in the instant case were in the course of a criminal investigation, rather than during 'a routine exercise of Administrative responsibility.' " Steele, 896 F.2d at 1003 (quoting United States v. Equihua-Juarez, 851 F.2d 1222, 1225 (9th Cir.1988)).
 
 
 12
 Agent Houghtaling's investigation into appellant's identity initially related only to his immigration status. The purpose of the agent's questions was to ascertain whether there was a potential violation of appellant's INS parole status, a purely civil, administrative function.[1] Compliance or non-compliance with INS regulations and conditions of INS parole are civil matters. The INS was initially inquiring only for administrative purposes. True answers by appellant regarding his identity would not incriminate him with respect to the initial INS inquiry. They would have only civil consequences. Under these circumstances, even the broad "exculpatory no" doctrine adopted by the Steele court does not apply.
 
 III. Remaining Issues
 
 13
 The written statement in which Sanchez-Bastos falsely identified himself was prepared in Spanish by Agent Houghtaling, but it contained Miranda warnings in English only. It would appear that Sanchez-Bastos knew little if any English. However, Agent Houghtaling testified that he gave Miranda warnings in Spanish. Agent Houghtaling's own description of events after Sanchez-Bastos initially identified himself (to Houghtaling) as Juan Duran is as follows:
 
 
 14
 ... I said, "You've got to tell me the truth and we are going to put this down on a sworn statement. If you lie to me it's five years in jail. You're not supposed to lie. These are your rights," and we went through the Miranda warnings on the Immigration statement form which includes the advice that it is a statement under oath and it's subject to criminal penalties if you tell me falsehoods.
 
 
 15
 Appellant alleges that he did not knowingly waive his right to remain silent or to consult counsel before providing incriminating statements to Agent Houghtaling.
 
 
 16
 Appellant also alleges that certain comments made by the prosecutor were improper and prejudicial. The prosecutor's opening statement contained the following:
 
 
 17
 The laws here in the United States, the Government will show, are intended for the [protection] of the United States citizens so aliens do not come in and take up all of the jobs.
 
 
 18
 In his closing statement, the prosecutor made assertions that could be interpreted as implying that the defendant should have been expected to take the stand on his own behalf. This suggestion, however, was averted by the trial court's interruption and warning to cease making such implications.
 
 
 19
 One comment by the trial court is also asserted by appellant to have been prejudicial. During his opening argument, appellant's trial counsel discussed the actions of Detroit authorities, actions that the court ruled not relevant to the charges against appellant. After repeated objections by the prosecution and warnings from the bench, defense counsel continued to comment on the same subject matter, prompting the court to tell counsel to "shut up."
 
 
 20
 Neither the voluntariness of Sanchez-Bastos' statement nor the allegedly prejudicial comments by the prosecution and the court were objected to or properly raised as a basis for new trial by trial counsel. These matters were not preserved and thus are not properly before this court on appeal.[2] The failure to raise these issues below precludes us from reviewing them in the first instance on appeal unless the trial court's actions or failures to act were plain error affecting substantial rights under Rule 52(b) of the Federal Rules of Criminal Procedure. United States v. Martin, 757 F.2d 770, 771 (6th Cir.), cert. denied, 472 U.S. 1029 (1985). While we do not countenance the statements made by the prosecutor in this case, we do not believe that the trial court committed plain error in not limiting the alleged prejudicial comments by the prosecution on its own. Similarly, we do not believe that the trial court committed plain error in its remarks to defense counsel or in admitting Sanchez-Bastos' statement.
 
 
 21
 Accordingly, the judgment appealed from is AFFIRMED.
 
 
 
 [1]
 Appellant was one of the Mariel boatlift Cubans. Since he cannot be deported to Cuba, he was detained for a period of time, then administratively paroled and provided with an I-94 card. While that administrative parole was revoked for a period of time, it was reinstated prior to his arrest by state authorities here
 
 
 [2]
 Although the trial court raised the issue of the propriety of the prosecutor's closing statements sua sponte, and also discussed the possibility of a mistrial, it appears that trial counsel never made a motion for mistrial