**Abdula AMIN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 87–289.

Supreme Court of Wyoming.

May 19, 1989.

Leonard D. Munker, State Public Defender and Carol Serelson, appellate counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Karen A. Byrne, and Gerald P. Luckhaupt, Asst. Attys. Gen., for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and BROWN, J., Retired.

BROWN, Justice, Retired.

Abdula Amin appeals the denial of his petition for post-conviction relief. That petition raises the following issues:

I

Appellant was denied effective assistance, due process, and equal protection by counsel's failure to argue marital privilege as means to defeat joinder of his trial with that of his spouse.

II

Counsel's failure to effectively cross-examine Valerie Amin deprived petitioner of his constitutional right to confront witnesses and effective assistance of counsel.

III

Counsel's failure to object to improper impeachment of Valerie Amin was prejudicial to appellant denying him among other rights, due process of law and effective assistance of counsel.

IV

Appellant was denied effective assistance of counsel when evidence supporting appellant's defense was not put before the jury.

V

Appellant's counsel was ineffective. Counsel was ineffective when they advised appellant to not testify so that he could preserve his appeal to the habitual criminal case.

VI

Appellant was denied due process of law by the failure of mitigating evidence to be provided to the jury in the habitual criminal case.

VII

The trial court erred in denying appellant's petition for post-conviction relief.

Amin did not raise ineffective assistance of appellate counsel as an issue in his petition. We affirm.

The facts of this case are set out in *Amin v. State*, 695 P.2d 1021, 1023 (Wyo. 1985), which affirmed Amin's conviction of aiding and abetting aggravated robbery. On January 3, 1987, Amin filed his original petition for post-conviction relief under W.S. 7–14–101 through 7–14–108 (1977). The state filed a motion to dismiss on March 2, 1987, and Amin responded to that motion by filing his own motion to amend his petition under W.S. 7–14–104 (1977). The district court responded to these motions by appointing counsel for Amin and withholding a ruling on the state's motion to dismiss until appointed counsel could respond to the state's motion. Amin's amended petition for post-conviction relief was filed on May 29, 1987. The state filed

a motion to dismiss on June 29, 1987. The district court held a hearing on Amin's amended petition and the motion to dismiss on August 20, 1987. At the conclusion of that hearing the district court asked for further briefing on the issue of marital privilege. Only the state filed a supplemental brief on that issue. After considering the supplemental brief and reviewing the record, the district court denied Amin's amended petition on October 27, 1987. This appeal followed.

This court addressed the scope of questions that can be raised in a petition for post-conviction relief in *Cutbirth v. State*, 751 P.2d 1257, 1261 (Wyo.1988), where we stated:

> This court has taken a disciplined approach to post-conviction relief, pointing out that it is not a substitute for the right of review upon appeal from a conviction, nor is it to be treated as an appeal. *Pote v. State*, Wyo., 733 P.2d 1018 (1987); *Hoggatt v. State*, Wyo., 606 P.2d 718 (1980); *Johnson v. State*, Wyo., 592 P.2d 285, cert. denied 442 U.S. 932, 99 S.Ct. 2864, 61 L.Ed.2d 300 (1979); *Munoz v. Maschner*, Wyo., 590 P.2d 1352 (1979). Questions which may be raised by motion for post-conviction relief are limited to those of constitutional magnitude which manifest a miscarriage of justice. *Wright v. State*, Wyo., 718 P.2d 35 (1986); *Hoggatt v. State*, supra. Those issues which could have been presented on appeal are not open to challenge by a motion for post-conviction relief because they are foreclosed by the doctrine of res judicata. *Wright v. State*, supra; *Hoggatt v. State*, supra; *Munoz v. Maschner*, supra.

We went on in *Cutbirth* to explain that this is a rule of procedural waiver, which parallels procedural waiver for post-conviction relief in the federal courts. *Cutbirth*, 751 P.2d at 1261–62, and cases cited therein.

The issues Amin raises in his amended petition are carefully phrased in terms of constitutional infirmities, based on a theme of ineffective assistance of trial counsel. The district court carefully reviewed each of them in its August 20, 1987, hearing, and then denied the amended petition because the issues it raises are procedurally barred under Wyoming law. See *Harris v. Reed*, 489 U.S. ——, ——, 109 S.Ct. 1038, 1043–44, 103 L.Ed.2d 308, 316–19 (1989); and *Campbell v. State*, 772 P.2d 543 (Wyo. 1989). We agree with that determination.

Affirmed.

URBIGKIT, Justice, dissenting.

This is one of three appeals [1] involving the contention of ineffectiveness of trial counsel where the decision by this court is impeded by a procedural disenfranchisement to avoid consideration of the facts as well as any substantive determination of whether the charge of ineffectiveness of appointed counsel for the defendant was justified. In basic concept, the method selected by the majority ignores supervisory responsibility for the criminal justice delivery system which should assure adequate representation by competent counsel as mandated by Wyo. Const. art. 1, § 10 and the Sixth and Fourteenth Amendments of the United States Constitution. Constitutional validity and substantive adjudication is sacrificed on the altar denominated by waiver and procedural default by act of defending counsel. The inquiry is forfeiture or foreclosure of constitutional rights originating from action, inaction, or ignorance of trial or appellate defense counsel.[2]

---

**1.** *Murray v. State*, 776 P.2d 206 (Wyo.1989); *Kallas v. State*, 776 P.2d 198 (Wyo.1989).

**2.** A misapplication of terms is pervasive where procedural default and constitutional right extinguishment theories are implanted in the criminal adjudicatory justice delivery system. Waiver occurs only with conscious decision of the charged defendant. Forfeiture occurs without his knowledge or consent. In these ineffectiveness of counsel cases, the proper designation is forfeiture since the result normally occurs without decisional participation of the client. Cogently stated in singular descriptive terms in Westen, *Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure*, 75 Mich.L.Rev. 1214, 1214 (1977), Professor Westen related:

> Ten years ago, when I was a student in law school, I learned that it was difficult for a criminal defendant to lose completely his right to assert constitutional defenses. The

The paradigm was composed by Professor Strazzella in *Ineffective Assistance of Counsel Claims: New Uses, New Problems,* 19 Ariz.L.Rev. 443, 474–75 (1977) with admirable perceptiveness:

The debate over which rights of a defendant can be lost by counsel's inactivity or decision, as distinguished from a considered personal decision of the defendant, is one of the most confused and difficult issues in criminal procedure. The area has been made more obscure because courts have often erroneously referred to some forfeiture situations as "waiver" situations, thereby inviting reference to the waiver standards requiring the defendant's personal, knowing, and intelligent decision to waive a right. A forfeiture properly refers to a forfeiture of remedies and is a facet of the procedural law of judgments; it is a principle concerned with the finality of judgments. Many remedies may be forfeited without anyone's conscious decision. Some may be forfeited without the active participation of the defendant. It is a difficult task to sort out those situations in which counsel, acting, or failing to act, without the defendant's personal and understanding participation, may be taken to have forfeited a remedy for the defendant. Once this sorting is accomplished, however, and once it is acknowledged that counsel must act competently in order for the forfeiture to be effective, counsel's incompetence may be an important target for the defendant's attack. The use of ineffectiveness claims to neutralize possible forfeitures is likely to become an increased phenomenon in light of recent developments in forfeiture law as it relates to collateral attack. There is a growing potential that more defendants may be required to prove ineffectiveness as an essential link leading to relief on an underlying claim not timely or properly litigated earlier. [Footnotes omitted.]

Intrinsic to my opposition to this supposed expediting adjudication is a philosophically bedrocked determinate that substantive, not procedural, disposition of litigation is always to be preferred if not also required. A more obvious inquisition is, if fearful of substantive considerations, what do the courts—the judges—the justice delivery system have to hide by denial of factual consideration when substituting procedural subterfuge. We exchange adjudicatory dilettantism for substantive appellate review.

If the word printers of the Wyoming Supreme Court were denied usage of the words and phrases of waiver, forfeiture and procedural default when called to test the action, inaction or negligence of defense counsel, this court would seemingly have its processing of many criminal law

only way he could relinquish his constitutional defenses, I was told, was by actually "waiving" them. Moreover, in order to establish that a defendant had waived his defenses, the state faced a rigorous test: it had to show, in the famous phrase, that his waiver was "knowing, intelligent and voluntary." In other words, before the state could permanently prevent a defendant from asserting constitutional defenses, it had to show that he made a deliberate decision to forgo these defenses, that he made the decision after being fully apprised of the consequences and alternatives, and that the state itself had done nothing to make a decision to assert his rights more "costly" than a decision to relinquish them.

Today things are different. Law students now learn that a defendant can lose his constitutional defenses not only by waiving them, but also by "forfeiting" them. The significant difference between waiver and forfeiture is that a defendant can forfeit his defenses without ever having made a deliberate, informed decision to relinquish them, and without ever having been in a position to make a cost-free decision to assert them. Unlike waiver, forfeiture occurs by operation of law without regard to the defendant's state of mind. [Footnote omitted.]

As he then further notes (as it was in 1970, 1977, and yet remains today):

The classic formulation of the waiver doctrine is in *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938): "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." Everyone's favorite article on waiver, and still the most provocative treatment of the subject, is Tigar, *The Supreme Court, 1969 Term, Foreword: Waiver of Constitutional Rights: Disquiet in the Citadel,* 84 Harv.L.Rev. 1 (1970).

*Id.* at 1214 n. 1. *See also* Bines, *Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus,* 59 Va.L.Rev. 927, 952 (1973).

appeals grind to an inoperable halt. Substantive resolution of decretory issues for conviction validity, specifically including adequacy of performance of public agency defense counsel, appears as an undefinable void like the black hole of outer space for appeal resolution. The assumption in that avoidance normally apprehends a perplexity that lacks real substance to exist. Perhaps in no quantum has this court dug such an unnecessary and operational disindigenous chasm as in applying procedural default in post-conviction-relief cases to test counsel's performance in trial and appeal. We do not defend the quality of Wyoming lawyers, we play word games to avoid answering by examination what quality of assistance was actually provided.

Almost no other jurisdiction has chosen this character of preclusion for avoidance of constitutional responsibility for the justice delivery system administration. The travesty in concept is failure to perceive the result now actually demanded of all appellate counsel in any criminal case. Moral responsibility and ethical acknowledgement require that a defense of ineffectiveness of trial counsel should be raised by appellate counsel in each initial appeal since otherwise the appellate attorney is left as the only sinner available to flog. Rather than leave possible post-conviction processes for the evaluation of the character of performance, first appellate counsel, in essence, becomes the presumed incompetent by flight of words in failure and analysis of trial time events by simple conjecture that whatever it may have been, it was waived on first appeal.

This stricture is vested without the usual benefit of post-trial hearing or additional fact finding examination which constitutes the substance of meaningful disposition of the claimed denial of adequate assistance of counsel through the initial guilt determination. What we do is not just nonsensical, it is senseless and absurd.

The practical and indispensable component of forfeiture and procedural defaults as an escape from substantive disposition is that attorney fault is found without examination or opportunity for denial provided. Forfeiture and procedural default, even when labeled waiver, as a dispository messiah means without analysis or repose that the defending attorney and probably the appellate attorney committed a wrong on their client—they waived, they forfeited, they defaulted. It is needless, you see, to then first dissect whether there was a substance that could be improperly waived or defaulted. Our resulting syllogism is, "If it was—it was waived or defaulted; since it was waived and defaulted—it must have been." Avoidance of substantive consideration creates an appearance of the reality which, in fact, may never have existed at all.

The peculiar relationship of forfeiture and default to ineffectiveness of counsel colors the philosophic coverage of the legal process function. Most criminal cases in this jurisdiction are defended by appointed counsel as a function of the office of the public defender. An even higher percentage of all criminal appeals are handled by the same office. If one must review the last 130 criminal cases as matured to opinion when appealed to this court where the office of the public defender has tried the case and handled the appeal, only six cases present an ineffectiveness issue,[3] and none

---

**3.** As demonstrated by statistics, it is not a closely held secret that specific operational policies of the public defender agency reject raising initial appellate issues of ineffectiveness of trial counsel. It is also apparent from far too many briefs that a "duty of loyalty" or "failure to subject the prosecution's case to meaningful adversary testing" is also missing. *Osborn v. Shillinger,* 861 F.2d 612, 625 (10th Cir.1988). *See Campbell v. State,* 772 P.2d 543 (Wyo.1989) (Urbigkit, J., dissenting); *Smallwood v. State,* 771 P.2d 798 (Wyo.1989) (Urbigkit, J., dissenting); and *Cutbirth v. State,* 751 P.2d 1257 (Wyo.1988) (Urbigkit, J., dissenting). (And I would like to

add *Engberg v. State,* No. 87–15 which, for appellate counsel, was the most indefensible of any.)

Since June of 1986, this court has been presented through oral argument with only eight ineffectiveness of counsel pleaded cases. One of those, *Laing v. State,* 746 P.2d 1247 (Wyo.1987), was an appeal urging ineffectiveness of trial counsel where both private counsel tried the case and different private counsel presented the appeal. The appeal was denied on the merits.

have appeared as filings since January 1, 1988. What the present Wyoming adjudicatory system presents is the forced step of defense counsel avoidance by failure to raise the issue on initial appeal and then this court applies procedural default to protect initial trial counsel by denial of substantive analysis and disposition. With no exceptions yet to be encountered, the system presupposes and predetermines the result without relation to factual ingredients of the individual criminal conviction.

We are then directed to the factual criminal case of Abdula Amin, also known as James Reed, a black, who came to Cheyenne with his common-law wife, Valerie Amin, and served as her protector, if not her pimp, as she exercised professional endeavor as a prostitute. Amin either did or did not do a "Murphy" on a customer, but, in any event, was convicted of "aiding and abetting aggravated robbery," *Amin v. State,* 695 P.2d 1021, 1023 (Wyo.1985), while Valerie Amin was convicted of both aggravated robbery and kidnapping in a joint trial. It was not just the accessory conviction that caused Amin the greatest grief, but supplementing his conviction was enhancement by a prior criminal record to derive a habitual criminal stature and, despite his brief sojourn to come to Wyoming, he now receives a lifetime sentence in the Wyoming State Penitentiary. Yet, in impassioned refrain through the course of these proceedings, Amin claims that he did not receive a fair trial nor, in fact, that any criminal offense was ever committed by either he or his wife except prostitution.[4]

Following conviction and life sentence, appeal was then taken to raise five issues: search and seizure, prejudicial joinder, denied effective cross-examination of his wife, denied lesser-included offense instruction, and denied constitutional right to con-

---

The most recent, *Campbell,* 772 P.2d 543, presented a post-conviction-relief petition where the case was tried by the public defender, initially appealed by the public defender, and, in response to appointment for post-conviction relief, a totally unacceptable and insufficient *Anders v. State of Cal.,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, reh'g denied 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967) brief was filed leaving the defendant to pursue his post-conviction-relief proceeding pro se.

The remaining six cases reflect the following: *Frias v. State,* 722 P.2d 135 (Wyo.1986) was filed in the Wyoming Supreme Court in 1985 as involving a case tried by representatives of the public defender's office and appealed by appellate counsel of that same office. This court found ineffectiveness of counsel and reversed for retrial after which the defendant was acquitted on second proceeding.

*Campbell v. State,* 728 P.2d 628 (Wyo.1986) filed in the Wyoming Supreme Court in 1986 following trial by representation of the office of the public defender and appeal through association with the Wyoming Defender Aid Program of the University of Wyoming. Failure to call witnesses was determined not to have constituted ineffectiveness of counsel. This is the same case as noted above which came back on post-conviction relief and the office of the public defender disclaimed interest in the assistance to their former client.

*Gist v. State,* 737 P.2d 336 (Wyo.1987) was filed in the Wyoming Supreme Court in 1986 as represented by the public defender's office during trial and the appellate section of that agency handled the appeal with reversal of the conviction for ineffectiveness of trial counsel.

*Reynoldson v. State,* 737 P.2d 1331 (Wyo.1987) was filed in the Wyoming Supreme Court in 1986 as a post-conviction-relief petition. Ineffectiveness of trial counsel was considered and denied on the merits.

*Foote v. State,* 751 P.2d 884 (Wyo.1988) was filed in the Wyoming Supreme Court in 1987 and was previously denied on first appeal to the district court as untimely. Reversed by this court for determination was whether the delayed appeal from county court to district court was excused by the ineffectiveness of counsel in delayed filing.

The last case, *Cutbirth,* 751 P.2d 1257, was initially filed in the Wyoming Supreme Court in 1986 on a post-conviction-relief petition. Initial counsel was from the office of the public defender, different staff on post-conviction relief presented the issue of trial and appellate ineffectiveness of counsel. Original appeal had been determined in 1983. Procedural forfeiture was applied by this court as a response to the ineffectiveness of counsel contentions substantively raised on post-conviction relief. *See Cutbirth,* 751 P.2d 1257 (Urbigkit, J., dissenting). There has not been one appeal filed in this court since January 1, 1988 reaching the stage of consideration by this court where ineffectiveness of counsel has been asserted by the office of the public defender. *Cf. Campbell,* 772 P.2d 543 (Urbigkit, J., dissenting).

4. His frustration level is even more distressingly preserved by recent aggravated conduct at the state penitentiary while he serves this life sentence. Even the least appealing deserve the appearance of delivery of fair and even-handed justice.

front witnesses on the habitual criminal sentence. *Amin*, 695 P.2d at 1021. In first appeal rejection of these contentions, this court said:

> Counsel for appellant at a motion hearing before trial opposed the state's motion to consolidate the two Amin cases for trial. Counsel argued several theories in support of opposition to a joint trial, but did not assert the marital testimonial privilege.

*Id.* at 1026.

No consideration of the marital privilege was otherwise given in the decision except that this court concluded as a factual decision that her elicited testimony was "exculpatory, both as to her and her husband." *Id.* at 1026. Strangely enough, for a similar reason, the limitation of cross-examination was also ratified.[5]

In July 1985, after issuance of the mandate by this court following appeal in February, Amin wrote a letter to the trial judge requesting the appointment of an attorney for assistance in post-conviction relief "due to newly discovered evidence," which included the following statement:

> There are several other allegations stemming from misconduct & conspricy [sic] on the part of the defense lawyers who knowingly conspired with a person or persons unknown to "shift the burden

of proof & use unetichal [sic] tactis [sic] to deceive & sham a Farce defense. We Valerie Amin & Abdula Amin are asking to be appointed lawyers to present these facts before the court and to be heard on these constitutional violations in the interest of justice.

Following response from the trial court that his letter had been referred to the public defender (which office had provided the trial representation), Amin wrote again in late July requesting file documentation stating:

> I wrote you a month or so ago asking if you would direct someone to get me copies of all the statements & motions.
>
> There are still a few things I need to "show my case" inwhich [sic] I was told the Public Defender didn't have. I would appreciate again if you would have someone send me the rest of the information I need such as:
>
> (1) Any & all motions my lawyer or my co-defendant[']s lawyer filed such as
>
> Bill of particulars or discovery
>
> Valarie [sic] Amin statement
>
> And all copies inwhich [sic] the DA filed as evidence he would introduce.
>
> Also I have my evidence & *prove* beyond a doubt that there was prejudicial errors made and I need to show this

---

5. The complete record from first appeal is not present in this court for consideration in this post-conviction-relief appeal, but Amin's brief as filed in that case stated:

> At the time the district court ordered Appellant's trial consolidated with Valerie Amin's trial, Appellant objected noting that difficulties were likely to arise because of the defendant's marital status. The district court rejected Appellant's position as "specious."
>
> \* \* \* \* \* \*
>
> Valerie Amin testified against her husband, Appellant, at his criminal trial. He objected to the testimony. Clearly, then it was error for the trial court to permit joinder and allow evidence to be admitted against Appellant in violation of § 1–12–104, W.S.1977. [Immunity statute for husbands and wives as witnesses against each other.]

The State responded in brief in that first appeal:

> A hearing was had on the State's motion to consolidate the matters of Valerie Amin and Abdula Amin prior to trial. Mrs. Amin's counsel did not contest the joinder. The basis expressed by the State in support of consolida-

tion was that there the joinder would not create confusion in the jury's mind that the same witnesses would be called for both and that their testimony would be the same. Therefore, for judicial economy, the request was made.

> Counsel for Amin appeared and opposed the motion. While a variety of theories were propounded to support the opposition, counsel for Appellant did not assert the marital testimonial privilege.

In the face of the specific testimony provided by the statute, failure of all participants to recognize functionality of the immunity statute borders incomprehensibility.

> No husband or wife shall be a witness against the other except in criminal proceedings for a crime committed by one against the other, or in a civil action or proceeding by one against the other. They may in all civil and criminal cases be witnesses for each other the same as though the marital relation did not exist.

W.S. 1–12–104.

evidence to the court. How can I get this evidence shown to the court without the assistance of an attorney to see these facts?

I need to see a lawyer on this evidence that was so damaging that it violated both Valarie [sic] & my rights beyond a doubt.

I would appreicate [sic] it if you could advise me what I need to do to get before the court of law with this evidence. And I need this information & papers of motions I ask for, I would again appreicate [sic] your help concerning this matter. [Emphasis in original.]

This time the trial court's response in acknowledging the letter was:

I have asked the district attorney's office to set this as a motion to be heard before the Court on Friday, August 2nd. A copy of your letter, and my reply, is being forwarded to both the district attorney and the public defender's office.

At that hearing, the director of the office of the public defender stated to the trial court, as he analyzed the petition submitted by Amin:

He is now asking for the appointment of an attorney to assist him. He makes an attack upon the attorneys that have represented him, and indicates that there is some kind of problem between the prosecutor's office and defense counsel in the case. Basically, he attacks—alludes to ineffective assistance of counsel. He states that an officer committed perjury; that another officer withheld information and evidence. He alleges misconduct or conspiracy between the attorneys on the defense and persons unknown to shift the burden of proof. That the trial was a farce. He is basically asking now for another lawyer to pick up and deal with his case.

The only provisions that I'm aware of, to proceed in court, is either by way of a writ of habeas corpus challenging the jurisdictional issues involved, or by a petition for post conviction relief under the statute. I don't know that my office is obligated to file either of those, in light of the fact that we participated in the trial, and that a direct appeal has been reviewed. These are post conviction matters that he can raise. He has brought these issues to the court. I suspect that I could send somebody out to visit with him, but that means that we would have to do it with every case under the circumstances and start some kind of post conviction procedure, and we are not equipped to do that, either time wise or financially, and we don't have the people to raise every spurious issue under the circumstances, Your Honor.

Amin then filed a handwritten petition for post-conviction relief which stated "[d]enial of due-process and equal-protection of the law" and "gross-misrepresentation and ineffective assistance of counsel by withholding evidence to prove defense." As detailed by attachment, ineffectiveness of counsel contentions included:

The Attorneys * * * failed to act competently and zealously by;

1. Not preparing and handleing [sic] the evidence adequately.

2. By neglect in handling legal evidence entrusted to them.

3. By not handling the evidence within the bounds of the law, by suppressing or allowing material and important evidence to be suppressed that would * * * [have] gathered the truth.

4. By not acting in the best interest of the defendants, in handling evidence to defend against the charges of the State.

5. The lawyers concealed or knowingly fail[ed] to disclose statements and evidence required by law to reveal. And intentionally violated the rule of procedure of evidence.

6. Suppressed evidence to the defendants against his legal obligation to reveal or produce.

The results to the defendants was denial of equal-protection of the law and due-process.

By motion and memorandum in support for dismissal, in addition to res judicata on prior appellate issues, the State contended that "the petition in this case claims counsel was ineffective. Again, however, noth-

ing is submitted to support the allegations in the petition." To which Amin's response was made:

Comes now the Petitioners, Abdula K. Amin and on behalf of Valarie [sic] Y. Amin to this honorable Court of law *humbly* seeking that this court grant this motion to amend their post-conviction motion.

The Petitioners who will be named as Petitioners i[n] this action, being not eloquent nor learned in the law ask this court to grant this motion on behalf and in the interest of the law, inwhich [sic] the Petitioners ha[ve] claimed before the law as having their constitutional rights violated.

Petitioners also state and stand firm as to the attorney general[']s motion to dismiss that the petitioners didn't attach affidavits, records or other supporting evidence, state that reason *was given* why these supporting petitions weren't attached, see Pg 4–5 that all this information had and is surpressed [sic] even until this date. However, Petitioners do have some of these supporting facts and claims and will enclose them now and will ask that this court amend these along with post-conviction petition. Also there will be [a] supporting letter from one of the trial lawyers inwhich [sic] the Petitioner is *still trying* to seek papers, statements, police reports and *have been* trying to get these papers *since conviction* and *has been unable to obtain* them by the trial-lawyers, the appeal lawyer and the district attorney[']s office to this date. [Emphasis in original.]

On March 19, 1987, counsel was then first appointed in answer to Amin's request as followed by a request for reconsideration on appointment of counsel by Amin, which stated:

After reviewing your order for the appointment of representation by the public defender on my behalf, has led me to ask you for the appointment of private counsel due to what I deem to be a conflict of interest. For the following reasons I feel it would be *inappropiate* [sic] to appoint anyone other than the assistance of private counsel.

1. In our post-conviction petition it is alleged "gross-misrepresentation" on the part of both the public defender in my behalf and private counsel appointed in behalf of Valarie's [sic]. We have said they were ineffective and incompetant [sic] and were a part of the suppression of evidence.

For these reasons we request the appointment of private counsel to represent us in our behalf on this petition.

We would also request that we have the opportunity to confer and meet with the attorney or attorneys who will represent us.

Also on behalf of Valarie [sic] Amin we[']re requesting "jointer petition" [sic] and that we both be represented by counsel.

We pray that you'll find it necessary to accomadate [sic] us on these request[s].

A comprehensive and carefully detailed amended petition was filed by new counsel appointed by order of March 19, which reviewed in detail the facts of the case, the insufficiency of counsel defenses and the failure to initially present the marital testimonial privilege by statement:

At the motion hearing opposing the state's motion for joinder, Mr. Amin's counsel argued various theories in support of the opposition of a joint trial. * * * However, as pointed out in the Supreme Court opinion in its opinion in Mr. Amin's appeal, counsel did not assert the marital testimonial privilege. Although it technically does not appear that the marital privilege is precisely raised, petitioner's counsel does discuss problems which he anticipates would occur if Mrs. Amin testifies.

However, had the marital testimonial privilege been clearly asserted, the trial court would have been faced with the dilemma of Mrs. Amin not being permitted to testify due to the marital privilege but at the same time having the right to testify on her own behalf.

This petition enumerated in detail the prejudice to Amin from the evidence of Valerie Amin, and concluded:

Thus, Mr. Amin was prejudiced the lack of arguing. marital privilege as a means to defeat joinder. Certainly, if this had been done, the jury would have been faced with the shakey [sic] identification by Mr. Whitehead or Mr. Amin's testimony of what occurred. The impeachment of Mrs. Amin regarding the gun and Mr. Amin's implication in regard to that would not have occurred. Certainly, these changes would have given a probability of a favorable outcome for Mr. Amin.

Further enumeration of ineffectiveness contentions included failure of voir dire to be reported, raising the racial makeup of the jurors since Amin was black, and also his counseled non-testimony:

Petitioner Abdula Amin was counselled by his attorney to not take the witness stand and testify about the facts of the aggravated robbery charge because he might be asked questions about his prior criminal record and this would ruin his chances of appealing the habitual criminal conviction.

Additional ineffectiveness issues raised included fallout from the trial court's restriction of Amin's cross-examination of his wife and lack of argument of mitigation and mercy in assessment of the life sentence for habitual criminal status. In prayer, the amended petition asked for an evidentiary hearing.[6]

As a continued defense to the original and amended petitions for post-conviction relief, the memorandum of the State premised objection by a *State ex rel. Hopkinson v. District Court, Teton County,* 696 P.2d 54 (Wyo.), *cert. denied* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed.2d 155 (1985) analysis:

The substance of a fair trial must be missing before post-conviction relief is available. *State ex re[l]. Hopkinson v. District Court, Teton County,* Wyo., 696 P.2d 54, 64–65 (1985). The inquiry under our post-conviction relief statues is limited to a determination of whether or not the defendant was denied the right to be represented by counsel, to have witnesses and to have a fair opportunity to prepare and present his defense. *Morgan v. State,* Wyo., 708 P.2d 1244, 1244–1245 (1985).[7]

In issue analysis, the State argued that six issues raised by Amin were considered on direct appeal:

1. "Failure to argue marital privilege as means to defeat joinder denies due process, equal protection and effective assistance of council [sic]."

2. "Impeachment of Valerie Amin was improper and was prejudicial to Mr. Amin, denying him among other rights, the process of law."

3. "The open-ended search of Mr. Amin's vehicle violated his Fourth Amendment rights."

4. "Counsel's failure to effectively cross-examine Valerie Amin deprived petitioner of his constitutional right to confront witnesses."

5. "Lack of identification in habitual criminal phase violates due process confrontation."

6. During the hearing on appellant's status as a habitual criminal, he was denied his constitutional right to confront witnesses against him.

The following analysis argued that the other nine issues raised by Amin could have been brought in the initial appeal. Substantive review was provided for the failure to have voir dire reported, denied evidence and improper identification to then conclude:

Furthermore, it must be noted that the relief that Petitioner requests is for a "Mr. Murray" to be released from his "unconstitutional" confinement in the Wyoming State Penitentiary. It is difficult to understand why Petitioner is ask-

---

6. In further pleading, challenge was made and denied that appellate counsel for Amin in first appeal came to be a member of the office of the attorney general by the time of post-conviction-relief petition.

7. This attitude has been described in national literature in discussion of standards of conduct to be expected of defending counsel as to the "warm body standing there sufficiency threshold." The only "assistance" that does not meet this criteria is when the accused is favored with only the gone, dead or disbarred lawyer.

ing for that particular relief. If, however, Petitioner in actually desiring his own relief, he has not set forth any errors of the constitutional magnitude necessary to effectuate that end.

In further brief (none was filed on behalf of Amin), the State, apparently at the request of the trial court, substantively addressed the marital privilege.

There was no discussion that ineffectiveness of trial counsel had to be raised in first appeal or was waived as a procedural default from initial motion to final brief. As then enveloped in trial court order:

THIS MATTER being brought before the court upon Respondent's motion to dismiss the petition for post-conviction relief, and,

THE COURT having heard argument, and fully considering the record, finds that the petition should be dismissed for the reasons stated in Respondent's, State of Wyoming's, memorandum and,

THEREFORE IT IS ORDERED that the petition should be, and hereby is, dismissed and that the post-conviction relief prayed for in the petition be, and hereby is, denied.

Clearly, in post-conviction-relief brief as quoted by the majority of this court in present opinion, six specific trial issues of ineffective assistance of counsel are raised which had not been decided on the merits in initial appeal. The State had characterized these issues for post-conviction relief:

The first six issues concern ineffective assistance of counsel and the last issue concerns the denial of the post-conviction relief petition. The first three issues were raised on direct appeal; the next three could have been raised. None have merit.

The post-conviction statutes provide for claims of *substantial* denials of constitutional rights at the trial level. However, "[t]he remedy does not permit review of error which could or should have been brought by direct appeal." *Hoggatt v. State*, Wyo., 606 P.2d 718, 722 (1980). "Post-conviction relief may be granted only in extraordinary circumstances which strongly suggest a miscar-

riage of justice and may not be entertained as a substitute for raising appealable issues." *Id.* [Emphasis in original.]

And then, in substantive analysis:

The first six arguments raised by Appellant concern effective assistance of counsel. If for some reason the court determines these questions should be addressed on their merits, Appellant's claim for relief must fail because he was afforded effective assistance of counsel.

The standard used by the Wyoming Supreme Court is one of reasonableness.

This court now misidentifies what the trial court did by a three-sentence disposition:

The issues Amin raises in his amended petition are carefully phrased in terms of constitutional infirmities, based on a theme of ineffective assistance of trial counsel. The district court carefully reviewed each of them in its August 20, 1987, hearing, and then denied the amended petition because the issues it raises are procedurally barred under Wyoming law. * * * We agree with that determination.

In first mistake, the statement of trial court denial on a basis of waiver simply is not validated by order, pleading or facts in this record. The trial court simply did not apply a *Cutbirth v. State*, 751 P.2d 1257 (Wyo.1988) waiver since *that case* had not yet been decided and the theory of procedural default to deny consideration of ineffectiveness of trial counsel, if not raised in initial appeal, had not yet seen the lights of night in Wyoming criminal law appellate adjudication.

More directly controversial in appeal denial justification is that "Amin did not raise ineffective assistance of appellate counsel as an issue in his petition." Obviously, this places a direct charge of ineffectiveness of present appellate counsel in the preparation and presentation of the appeal from the order denying the petition for post-conviction relief.

Cutbirth was decided March 11, 1988. Amin's brief was filed February 29, 1988 and the State followed on March 24. We

have a restructured adjudicative system enunciated after everything had occurred in this case except filing of the brief by the State. The State's counsel chose not to address the thesis of ignoring trial counsel mistake by placing blame on appellate counsel for failure to include in initial appeal as the subject of waiver and procedural default by ineffectiveness, inaction or mistake of counsel. Now we have this court assessing waiver and forfeiture against present appellate counsel based on a rule of law of this court that did not even exist when the brief was written. See discussion in regard to procedural default, L. Yackle, Postconviction Remedies § 85 at 185 (1988 Cum. Supp.). See also *Osborn v. Shillinger*, 861 F.2d 612 (10th Cir.1988).

Unless it might be surmised that *Cutbirth* has some legitimate ancestry and the present decision is not seeped in procedural illegitimacy in requiring ineffectiveness to be procedurally processed in initial appeal, I am challenged to forcefully examine the state of the national precedent within literally thousands of cases on the subject consequently available.

What we do in Wyoming adjudication not only makes no sense in expeditious adjudication, but lacks support in example from available precedent in other jurisdictions in this nation. Summarily, in recognition that the fastest method for doing things is to just do it, substantive disposition in legal

processes not only uphold the legitimacy of the system but is normally both easier and faster. Procedural disposition contrarily often produce magnified confusion and extended proceedings. As a case in point, I will examine the waiver-forfeiture law of Illinois from which system the majority establishes the decision to cite with approval.[8]

The protocol of Illinois law, as a principle precedent for the inadvisable path now chosen by this court on first appeal applied waiver in ineffectiveness cases, is illustrated by this court's most recent citation in majority opinion of *Harris v. Reed*, — U.S. —, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Illinois started in a different posture as the principal waiver state from a case history derived in earlier days, then unrelated to ineffectiveness of counsel questions, by the bill of exception as the appeal mode. *People v. Dolgin*, 6 Ill.2d 109, 126 N.E.2d 681 (1955).

Differing from Illinois, Wyoming does not have a state procedural history of a requirement for the address of ineffectiveness of counsel in first appeal. Since the thesis and denial was created as a new principle of the state adjudication in *Cutbirth*, 751 P.2d 1257, the decision came after trial and briefing in this case. The apparent purpose of procedural bar and ineffectiveness cases by this majority is to

---

**8.** The State of Illinois, whatever its relationship to waiver-forfeiture on ineffectiveness cases might be, was an early jurisdiction to enact the post-conviction remedy statute and is generally considered to be the model from which the Wyoming law was subsequently taken. See *Sanchez v. State*, 755 P.2d 245 (Wyo.), *cert. denied* — U.S. —, 109 S.Ct. 161, 102 L.Ed.2d 131 (1988) (Urbigkit, J., dissenting) and *Cutbirth*, 751 P.2d 1257 (Urbigkit, J., dissenting). The history of the Illinois statute as in part related by Jenner, *The Illinois Post-Conviction Hearing Act*, 9 F.R.D. 347, 353 (1950), is thought-provoking today in discussing *Marino v. Ragen*, 332 U.S. 561, 68 S.Ct. 240, 92 L.Ed. 170 (1947):

It was in this case that the late Mr. Justice Rutledge in his concurring opinion delivered a scathing denunciation of Illinois law which accelerated the activity looking toward reform. He observed that no one seemed to be sure what remedies were available in Illinois in the varying circumstances of denial of due process of law. In commenting on what ap-

peared to him to be the ability of law officers of the State of Illinois to prevent most hearings on technicalities of procedure, Mr. Justice Rutledge attributed the confusion to what he characterized as a "procedural morass." The post-conviction situation he described as "the Illinois merry-go-round of *habeas corpus, coram nobis*, and writ of error." [*Marino v. Ragen*,] 332 U.S. 561, 570, 68 S.Ct. 240, 244 [92 L.Ed. 170] (1947). He urged (and he was joined by Mr. Justice Douglas and the late Mr. Justice Murphy) that the federal courts sitting in Illinois accept jurisdiction of all *habeas corpus* petitions on the ground that as a practical matter there was no adequate remedy in Illinois. [Emphasis in original.]

See also *People v. Slaughter*, 39 Ill.2d 278, 235 N.E.2d 566 (1968). There is an admirable but apparently unlearned, lesson here for Wyoming; but, as we shall see, a history yet to be repeated from Illinois and now to be duplicated in Wyoming.

foreclose reconsideration in the federal courts by denial of consideration in this court. Not only does the intent lack moralistic validity, but the pursuit also misses required historical justification. See *Johnson v. Mississippi,* —— U.S. ——, 108 S.Ct. 1981, 1988, 100 L.Ed.2d 575 (1988); *Henry v. State of Miss.,* 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408, *reh'g denied* 380 U.S. 926, 85 S.Ct. 878, 13 L.Ed.2d 813 (1965); and *Barr v. City of Columbia,* 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed. 2d 766 (1964). This is not a state procedural bar which has been strictly or regularly followed since first created in contemporary adjudication in *Cutbirth,* 751 P.2d 1257 without prior briefing.

Using Illinois law then, as adopted by majority in citation of *Harris* as a postural justification for this Amin decision, we need to review what has been selected as a role model for Wyoming law. In no conception could this court find a less sufficient, more confused process emburdened adaptation by attempt to avoid substantive issue disposition by procedural disclaimer for ineffectiveness cases. *Harris* takes center stage in examination.

That case started in 1977 with an Illinois state court conviction of *Harris* for murder. *Harris* had been represented at trial by the public defender and on appeal by the assistant public defender with stated issues questioning sufficiency of the evidence. Conviction was affirmed by order without opinion in 1979 and, in the same year, a post-conviction-relief petition was filed which, in essence, remains pending this one decade later. The public defender's office was permitted to withdraw and another attorney was appointed. Hearings were held by the trial court in both 1980 and 1981 without testimony. Relief was denied and the result was affirmed on appeal without opinion in 1983. The intrinsic issue was the ineffectiveness of original trial counsel in failure to present alibi witnesses.

In 1985, *Harris* came to the federal court by a petition for a writ of habeas corpus under 28 U.S.C. § 2254, to be met with a responsive motion for summary judgment. *United States ex rel. Harris v. Reed,* 608 F.Supp. 1369 (N.D.Ill.1985). Two broad issues have been carried forward since disposition of the first appeal as generically called ineffectiveness of trial counsel and newly discovered evidence. The federal judge, in a fifteen-page opinion, granted summary judgment in part, except as to the ineffective assistance of counsel claim and set an evidentiary hearing. *Harris,* 608 F.Supp. 1369. The federal judge, in her opinion, found that the state courts had considered the merits of the ineffectiveness claims in the post-conviction-relief process conjunctive to a possible waiver of failure to include in the initial appeal. *Harris,* 608 F.Supp. at 1376. She also noted one of the waiver exceptions found in Illinois law: "Basis for the claim is not found in the record." *Id.* at 1377. As we will later see, this is one of the six such exceptions in Illinois law.

Proceeding then on the merits, a three-day hearing was held and the federal judge determined the proceeding on the claim of ineffectiveness of 1977 trial counsel *to lack validity as a substantive decision. Harris v. Reed,* 822 F.2d 684 (7th Cir.1987), *cert. granted in part* —— U.S. ——, 108 S.Ct. 1107, 99 L.Ed.2d 268 (1988), *judgment reversed* —— U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Appeal was taken to the court of appeals and, with one dissent, that tribunal affirmed the dismissal *without* reaching the merits, "since we conclude that the state court did not excuse the procedural default at issue." *Id.* at 685. Judge Cudahy, in concurrence, demonstrated an extraordinary perceptiveness:

I write separately only to indicate my view that the ineffective assistance of counsel claim should not be treated as waived. As the majority notes, the Illinois Appellate Court made no express determination that the claim had been waived. The Illinois court considered the claim on its merits. Rather than attempting to define the unspoken "intent" of that court, I think we should invoke a presumption that waiver not clearly found has been condoned. Waiver, particularly of an ineffective assistance claim on direct appeal, is an essentially technical ground for avoiding very diffi-

cult, very important and very close issues on the merits. Certainly it is within the state courts' power to protect their procedural requirements merely by making express findings that a petitioner has waived.

Judge Getzendanner struggled with the important and difficult issues here and, after a hearing lasting three days, denied the petition. Although the matter is very close, I would support her determination and thereby reach the same result as the majority but by a different route.

*Id.* at 687.

The United States Supreme Court accepted certiorari and reversed the court of appeals in *Harris,* 109 S.Ct. 1038. Requiring the state court to be explicit in its reliance on procedural default, the United States Supreme Court reiterated its plain statement criteria of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983):

Applying the "plain statement" requirement in this case, we conclude that the Illinois Appellate Court did not "clearly and expressly" rely on waiver as a ground for rejecting any aspect of petitioner's ineffective-assistance-of-counsel claim. *Michigan v. Long,* 463 U.S., at 1041, 103 S.Ct., at 3476. To be sure, the state court perhaps laid the foundation for such a holding by stating that most of petitioner's allegations "could have been raised [on] direct appeal." App. 12. Nonetheless, as the Court of Appeals recognized, this statement falls short of an explicit reliance on a state-law ground. Accordingly, this reference to state law would not have precluded our addressing petitioner's claim had it arisen on direct review. As is now established, it also does not preclude habeas review by the District Court.

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

*Harris,* 109 S.Ct. at 1045 (footnote omitted).

Consequently, the case went back to the court of appeals to consider the ineffectiveness claim *on the merits, as it had been considered on the merits* by the federal district court and as it had been found *to have been considered on the merits* by the state courts. This twelve-year course of litigation has evolved from the state and jurisdiction with the strongest bent to apply procedural default to ineffectiveness cases, if not first considered on initial appeal.

Recalling to attention that Federal Judge Getzendanner considered the merits exception to the preclusion rule not to be determinable from the non-supplemented record, it is necessary to pursue this role model for Wyoming adjudication in recognition that, to some degree, all Illinois ineffectiveness claim cases are inevitably considered on the merits to at least exclude application of one of the six Illinois exceptions (or eight) that exist.

Those six exceptions are: (1) not determinable from the record—extrinsic evidence required for proper disposition. *Harris,* 109 S.Ct. 1038; *People v. Gaines,* 105 Ill.2d 79, 85 Ill.Dec. 269, 473 N.E.2d 868 (1984), *cert. denied* 471 U.S. 1131, 105 S.Ct. 2666, 86 L.Ed.2d 282 (1985); *People v. Stepheny,* 46 Ill.2d 153, 263 N.E.2d 83 (1970). *Cf. People v. Somerville,* 42 Ill.2d 1, 245 N.E.2d 461 (1969). (2) Fundamental fairness to the defendant requires evaluation of the legal service provided as related to trial issue presented. *People v. Albanese,* 125 Ill.2d 100, 125 Ill.Dec. 838, 531 N.E.2d 17 (1988); *People v. Cihlar,* 111 Ill.2d 212, 95 Ill.Dec. 297, 489 N.E.2d 859 (1986); *People v. Burns,* 75 Ill.2d 282, 26 Ill.Dec. 679, 388 N.E.2d 394 (1979); *People v. Spicer,* 42 Ill.App.3d 246, 355 N.E.2d 711 (1976); *People v. Mamolella,* 42 Ill.2d 69, 245 N.E.2d 485 (1969); *Somerville,* 245 N.E.2d 461; *People v. Ashley,* 34 Ill.2d 402, 216 N.E.2d 126 (1966); *People v. Hamby,* 32 Ill.2d 291, 205 N.E.2d 456 (1965). (3) Failure of appellate counsel due to incompetency to either in initial appeal or prior post-conviction-proceeding appeal to raise ineffectiveness of prior counsel. *People v. Carroll,* 45 Ill.App.3d 1063, 4 Ill.Dec. 555, 360 N.E.2d 491 (1977); *People v. Chandler,* 44 Ill.App.3d 1067, 3 Ill.Dec. 608, 358 N.E. 2d 1293 (1976); *People v. Buckholz,* 24

Ill.App.3d 324, 320 N.E.2d 421 (1974); *People v. Frank*, 48 Ill.2d 500, 272 N.E.2d 25 (1971); *Hamby*, 205 N.E.2d 456. (4) Failure to call witnesses or introduce essential evidence. This is an off-shoot of the fundamental fairness exception. *Somerville*, 245 N.E.2d 461; *Ashley*, 216 N.E.2d 126. (5) Misadvised plea. *People v. Owsley*, 66 Ill.App.3d 234, 22 Ill.Dec. 795, 383 N.E.2d 271 (1978). (6) Conflict of interest, same attorney or agency on appeal as at trial. Contemplation that you do not argue your own mistake syndrome. Question of private attorney and agency attorneys. *United States ex rel. Devine v. DeRobertis*, 754 F.2d 764 (7th Cir.1985) [9]; *Gaines*, 85 Ill. Dec. at 276, 473 N.E.2d at 875; *Somerville*, 245 N.E.2d 461; *Ciucci v. People*, 21 Ill.2d 81, 171 N.E.2d 34 (1960), *cert. denied* 366 U.S. 952, 81 S.Ct. 1908, 6 L.Ed.2d 1245 (1961). "It would be unreasonable to expect appellate counsel to convincingly raise

and argue his own incompetency." [10] *Gaines*, 85 Ill.Dec. at 276, 473 N.E.2d at 875.

In generic function, the process required for elimination of all six generalized exceptions requires consideration of the merits. This consideration then realistically precludes insulation from federal court habeas corpus as witness. *Harris*, 109 S.Ct. 1038. The scope of these many cases suggests that preclusion disposition apparently gets started with some undefined anxiety that avoidance is better than following the rational rule that ineffectiveness claims should procedurally be resolved on the merits at a one-time post-conviction review, a motion for new trial, or petition for writ of habeas corpus with finality and on the substance of the claim.[11]

All of this litany demonstrates in distinction to the majority's citation of *Harris*

9. Again, in statement by Judge Cudahy in dissent:

I respectfully dissent. Devine's ineffective assistance claim may or may not have merit, but I have no reason to believe it has been waived.

The record shows that on his initial appeal, Devine was represented by counsel from the same firm that represented him at trial. Whatever may have been the procedural determinations of the state courts, that identity —of record—of trial and appellate counsel is sufficient "cause" to overlook the alleged state default. No doctrine of comity requires the federal courts to defer to state court determinations which are in conflict with the facts of record. No lawyer on appeal is expected in either state or federal jurisprudence to argue his own or his firm's incompetence at trial as a ground of appeal.

Hence I do not believe Devine's ineffectiveness of trial counsel claim has been waived. It should have been considered by the district court on the merits.

*Devine*, 754 F.2d at 768–69 (footnotes omitted).

10. My careful effort to place each Illinois case where waiver was waived into the six categories suggests two other exceptions which may be under-enunciated fundamental fairness decisions. These additional class of cases are death penalties in broad group and another that fits nothing and may just be considered as "whatever reason criminal proceedings" where ineffectiveness contentions are considered on the merits without any specific consideration of waiver. The death cases include: *People v. Caballero*, 126 Ill.2d 248, 128 Ill.Dec. 1, 533 N.E.2d 1089 (1989); *Albanese*, 125 Ill.Dec. 838, 531 N.E.2d 17; *People v. Kubat*, 114 Ill.2d 424, 103 Ill.Dec.

90, 501 N.E.2d 111 (1986), *cert. denied* 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207, *reh'g denied* 481 U.S. 1073, 107 S.Ct. 2471, 95 L.Ed.2d 879 (1987); and *People v. Neal*, 111 Ill.2d 180, 95 Ill.Dec. 283, 489 N.E.2d 845 (1985), *cert. denied* 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733, *reh'g denied* 479 U.S. 877, 107 S.Ct. 257, 93 L.Ed.2d 182 (1986). To recognize cases of the second category, we consider the fundamental fairness evaluation for subsequent post-conviction-relief proceedings: *People v. Foster*, 178 Ill. App.3d 1009, 128 Ill.Dec. 140, 534 N.E.2d 160 (1989) and *People v. Free*, 122 Ill.2d 367, 119 Ill.Dec. 325, 522 N.E.2d 1184, *cert. denied* — U.S. —, 109 S.Ct. 190, 102 L.Ed.2d 159, *reh'g denied* — U.S. —, 109 S.Ct. 522, 102 L.Ed.2d 555 (1988). *See* Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L.Rev. 299 (1983).

11. Commonly cited are more than a couple dozen Illinois cases which include: *Caballero*, 128 Ill.Dec. 1, 533 N.E.2d 1089 (ineffectiveness of trial and appellate counsel considered on the merits in post-conviction-relief appeal which was remanded for evidentiary hearing on effectiveness in this death case); *Albanese*, 125 Ill. Dec. 838, 531 N.E.2d 17 (death case considered on its merits); *People v. Jones*, 174 Ill.App.3d 794, 124 Ill.Dec. 349, 529 N.E.2d 66 (1988) (ineffectiveness as a post-conviction-relief issue raised after guilty plea as a subject considered on its merits); *People v. Bernardo*, 171 Ill.App. 3d 652, 121 Ill.Dec. 550, 525 N.E.2d 857 (1988) (waiver not considered in determination of ineffectiveness claim of incompetency of the attorney as a resolution on the merits); *People v. Jones*, 168 Ill.App.3d 925, 119 Ill.Dec. 466, 474,

that in essentially every case in Illinois, it became necessary for the state court system to give some consideration to either or both the underlying occurrence from which the ineffectiveness is claimed or the conduct of the attorney in itself as a process of disposition of the post-conviction-relief inquiry. By the nature of the exceptions, consideration on the merits is irretrievably required to exclude for the court to then proceed to apply pretexted procedural default.

This is clearly demonstrated by the more recent cases which include *People v. Fos-*

*ter*, 178 Ill.App.3d 1009, 128 Ill.Dec. 140, 534 N.E.2d 160 (1989); *People v. Avitia*, 178 Ill.App.3d 968, 128 Ill.Dec. 70, 533 N.E.2d 1158 (1989); *People v. Caballero*, 126 Ill.2d 248, 128 Ill.Dec. 1, 533 N.E.2d 1089 (1989); and *People v. Free*, 122 Ill.2d 367, 119 Ill.Dec. 325, 522 N.E.2d 1184, *cert. denied* —— U.S. ——, 109 S.Ct. 190, 102 L.Ed.2d 159, *reh'g denied* —— U.S. ——, 109 S.Ct. 522, 102 L.Ed.2d 555 (1988). An Iowa court well states a summarization that can most explicitly be applied to Illinois case law:

> We are not completely satisfied that the defendant has demonstrated suffi-

522 N.E.2d 1325, 1333 (1988) (dismissed and remanded for hearing on its merits):

> The State contends that petitioner has waived his arguments by failing to raise them during his trial and on direct appeal. However, given that petitioner has alleged ineffective assistance of counsel, the argument that he waived the legal arguments his attorney failed to raise at trial is not tenable. Moreover, only issues which have a factual basis in the record may be raised on direct appeal. (*People v. Edwards* (1980), 83 Ill.App.3d 128, 38 Ill.Dec. 540, 403 N.E.2d 771.) The allegations Jones brings in his post-conviction petition could not have been raised on appeal, as they are not found in the record, and therefore he cannot be deemed to have waived these issues on the ground that he did not raise them in his appeal.

*Kubat*, 103 Ill.Dec. 90, 501 N.E.2d 111 (death case considered on its merits); *People v. James*, 111 Ill.2d 283, 95 Ill.Dec. 486, 489 N.E.2d 1350 (1986) (considered application of changed law in the decisions by determination on the merits of an ineffective issue for post-conviction relief. Remedy denied with the conclusion that no constitutional right to appellate counsel existed for post-conviction relief); *Cihlar*, 95 Ill.Dec. 297, 489 N.E.2d 859 (fundamental fairness examination when perjury claimed is not waived); *Gaines*, 85 Ill.Dec. 269, 473 N.E.2d 868 (in recognition of both the principles of sufficient record and fundamental justice, the supreme court, on the merits of the issues, found no prejudice); *People v. Churchill*, 92 Ill.App.3d 1006, 48 Ill. Dec. 364, 416 N.E.2d 395 (1981) (no evidence of negligent conduct of the attorney presented); *People v. Killion*, 76 Ill.App.3d 862, 32 Ill.Dec. 448, 395 N.E.2d 678 (1979) (consideration on the merits with inclusion of failure to include issue on appeal and in post-conviction. "[D]o not find any indication of trial counsel's incompetency." *Id.*, 32 Ill.Dec. at 451, 395 N.E.2d at 681); *Burns*, 26 Ill.Dec. 679, 388 N.E.2d 394 (fundamental fairness on the merits required consideration, reversal and new trial); *Owsley*, 22 Ill.Dec. 795, 383 N.E.2d 271 (misadvice on plea as incompetency); *Carroll*, 4 Ill.Dec. 555,

360 N.E.2d 491 (on the merits, appellate counsel not patently or clearly wrong); *People v. Pannell*, 44 Ill.App.3d 885, 3 Ill.Dec. 646, 358 N.E.2d 1331 (1977) (effectiveness issue determined on the merits in prior decision as identification question); *Chandler*, 3 Ill.Dec. 608, 358 N.E.2d 1293 (on the merits, no error of appellate counsel on issue presented); *Buckholz*, 320 N.E.2d 421 (incompetency of appellate counsel waived since pro se appeal); *Frank*, 272 N.E.2d 25 (on the merits, appellate counsel not patently wrong on failure to raise the issue on first appeal); *Stepheny*, 263 N.E.2d 83 (record not sufficient to preclude incompetence); *People v. James*, 46 Ill.2d 71, 263 N.E.2d 5 (1970) (fundamental fairness not implicated in choice as to manner of sentencing); *Mamolella*, 245 N.E.2d 485 (considered on appeal as lacking merit and fundamental fairness did not require relaxation of waiver); *Somerville*, 245 N.E.2d 461 (evidence on the face of the record on the merits; fundamental fairness not violated); *People v. Collins*, 39 Ill.2d 286, 235 N.E.2d 570 (1968) (no evidence outside of the original record presented, denial of hearing on the merits affirmed); *Ashley*, 216 N.E.2d 126 (review on the merits on appeal to determine that fundamental fairness is not violated. "Adequate appraisal of the merits of petitioner's argument can be made only in the context of the entire history of the post-conviction proceedings." *Id.*, 216 N.E.2d at 127); *Hamby*, 205 N.E.2d 456 (fundamental fairness rule required consideration on the merits without application of res judicata); and *Dolgin*, 126 N.E.2d 681 (waiver by private attorney, entire record was available). *See however, United States ex rel. Redd v. Thieret*, 692 F.Supp. 904 (N.D.Ill.1988), which found state remedy exhaustion and approved appointment of an expert witness on omitted state court insanity defense. That court observed that "[r]espondent's argument is not only rude, it is also wrong," when the court concluded that the petition for 28 U.S.C. § 2254 relief should be determined without return of the state prisoner to state consideration of a post-conviction remedy since that issue already had been decided by the state court by the denied appeal. *Id.* at 905.

cient reason for his failure to earlier raise his claims. We note, however, that under both the waiver doctrine and the ineffective assistance of counsel claim, we have to determine if the defendant was prejudiced. For that reason, we will review defendant's claims.

*Gavin v. State,* 425 N.W.2d 673, 675 (Iowa App.1988). Compare critique of Illinois review in *United States ex rel. Thomas v. O'Leary,* 856 F.2d 1011, 1019 (7th Cir. 1988), *reh'g* (10/20/88).

Nor was the federal court otherwise deterred in *United States ex rel. Sullivan v. Fairman,* 564 F.Supp. 575 (N.D.Ill.1983), where the prisoner pursued federal habeas based on trial court ineffectiveness complaint after denied state court appeal. Dismissal by that tribunal resulted in reversal on appeal. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450 (7th Cir.1984). A federal district court hearing followed and the writ was granted. The court of appeals reconsidered after another appeal which confirmed claimed ineffectiveness of counsel by affirming the decision of the federal district court which required a state court retrial. The issue of ineffectiveness was uncalled witnesses. *Sullivan v. Fairman,* 819 F.2d 1382 (7th Cir.1987). It is obvious beyond argument how much time would have been saved if the ineffectiveness issue had been realistically addressed by the state appellate court. *See People v. Sullivan,* 95 Ill.App.3d 571, 51 Ill.Dec. 60, 420 N.E.2d 474 (1981), *habeas corpus granted* 819 F.2d 1382 (7th Cir.1987).

The *Sullivan* case has some startling resemblance to the course of Wyoming litigation, *Osborn,* 861 F.2d 612; *Osborn v. Schillinger,* 639 F.Supp. 610 (Wyo.1986); *Osborn v. State,* 672 P.2d 777 (Wyo.1983), *cert. denied* 465 U.S. 1051, 104 S.Ct. 1331, 79 L.Ed.2d 726 (1984). See also the death

case of *Lewis v. Lane,* 832 F.2d 1446 (7th Cir.1987), *cert. denied* —— U.S. ——, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988), the waived waiver case of *Henderson v. Thieret,* 859 F.2d 492 (7th Cir.1988), *reh'g denied* (11/10/88), *cert. denied* —— U.S. ——, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989) and the most recently reversed death penalty proceeding on an effectiveness issue in *Kubat v. Thieret,* 867 F.2d 351 (7th Cir.1989), *reh'g denied* (3/15/89). This Illinois history to then return to *Harris,* supplies startling evidence, if not conclusive proof, that waiver and forfeiture as an attempted solution of contended issues of ineffectiveness of counsel cases when attempted to expedite is ineffective, expensive and complicating. This approach, as the Illinois rule, within the composite of a broad course of exceptions leaves singularly little if anything remaining within the initial rule. To do justice exceptions to the forfeiture rule are required; with exceptions, the rule expires. *See current cases: People v. Brown,* 179 Ill.App.3d 1009, 128 Ill.Dec. 852, 535 N.E.2d 66 (1989) and *People v. Brothers,* 179 Ill.App.3d 788, 128 Ill.Dec. 831, 535 N.E.2d 45 (1989).

Leaving behind those anguished difficulties intrinsic in Illinois as the state of origin for the Wyoming post-conviction relief, it becomes apparent that no other jurisdiction appears anywhere with a system that will provide precedent or persuasive logic to justify Wyoming's newly adopted forfeiture standard for ineffectiveness of counsel appellate review. See general review of state post-conviction-relief processes, D. Wilkes, Federal and State Postconviction Remedies and Relief ch. 9 and Appendix A (2d ed. 1987 & Supp.1988) and L. Yackle, Postconviction Remedies § 13 at 65 (1981 & Supp.1988).[12]

---

**12.** If ever a remedy has swallowed a right, habeas corpus has swallowed the right to effective assistance of counsel. For fear of lost convictions, indefensible breaches of duty to the criminally accused have been ignored, the right to counsel debased, and the adversary system of justice undermined. Throughout, the bar has been a silent observer of practices which if committed by other professionals would produce a host of indignant litigation. But it is no longer possible to avoid recogniz-

ing the constitutional obligations owed criminal defendants by their lawyers.
Bines, *supra* n. 2, 59 Va.L.Rev. at 986–87.

A consistent collateral proceeding mechanism for ineffectiveness cases exists in the federal system. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Rantz,* 862 F.2d 808 (10th Cir.1988), *cert. denied* —— U.S. ——, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989); *United States v. Pogue,* 865 F.2d 226

In first reference, it is clearly determinable that in the federal system forfeiture of the constitutional right, the inquiry does not arise regardless of whether ineffectiveness of counsel is raised in first appeal after conviction. The process and principle is basically to the contrary to normally direct that reviews, hearings and decisions are to be determined in collateral proceedings. This is the usual first presentation by collateral remedy which includes essentially all federal courts and many state jurisdictions. The West Virginia Supreme Court states this approach:

> We have in prior cases expressed concern that claims of ineffective assistance of counsel may be inadequately developed on appeal and, therefore, inappropriate subjects for direct review.

*State v. England,* 376 S.E.2d 548, 559 (W.Va.1988). *See also Cole v. White,* 376 S.E.2d 599 (W.Va.1988).

The Iowa court similarly directs:

> Ordinarily, the record on a direct appeal is insufficient to allow us to adjudicate a claim of ineffective assistance of counsel. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). In such cases, it is

preferable that the claim be litigated in postconviction proceedings, see *State v. Williams,* 285 N.W.2d 248, 271 (Iowa 1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1859, 64 L.Ed.2d 277 (1980), especially where the attorney's actions or omissions may be explainable as a matter of trial tactics or strategy, or where there is a need for additional evidence concerning what other lawyers would have done under similar circumstances. *State v. Schoelerman,* 315 N.W.2d 67, 71 (Iowa 1982). See also *Kane v. State,* 436 N.W.2d 624 (Iowa 1989); *Gavin,* 425 N.W.2d 673; *Cuevas v. State,* 415 N.W.2d 630 (Iowa 1987); and *Lamphere v. State,* 348 N.W.2d 212 (Iowa 1984).

The California system is a third approach which, with some variables, permits first utilization of the reversal issue on initial appeal by motion for new trial or, alternatively, in post-conviction proceedings within its habeas corpus action. *People v. Pope,* 23 Cal.3d 412, 152 Cal.Rptr. 732, 590 P.2d 859 (1979). In *People v. Fosselman,* 33 Cal.3d 572, 189 Cal.Rptr. 855, 659 P.2d 1144, 1149 (1983), that court stated:

> Reviewing courts will reverse convictions on the ground of inadequate coun-

(10th Cir.1989); *Government of Virgin Islands v. Forte,* 865 F.2d 59 (3rd Cir.1989) (28 U.S.C. § 2255 reversal of remand for *Batson* review); *Davis v. United States,* 865 F.2d 164 (8th Cir. 1988); *Ouellette v. United States,* 862 F.2d 371 (1st Cir.1988); *United States v. Yearwood,* 863 F.2d 6 (4th Cir.1988); *Robison v. Maynard,* 829 F.2d 1501 (10th Cir.1987) (Oklahoma state court proceeding). *Cf. United States v. Pelletier,* 845 F.2d 1126 (1st Cir.1988) (issue as not raised at trial and not considered on first appeal, but the Sixth Amendment issue subject to consideration in post-conviction). *See also United States v. Griffin,* 699 F.2d 1102, 1109 (11th Cir.1983) (preferable process is pursuant to 28 U.S.C. § 2255):

> To preclude, unequivocally and without cavil, presentation of the issue [ineffectiveness of counsel] for the first time on appeal is not to deny the convicted an 'opportunity to present it. The rule does not deny presentation, it merely locates it. Indeed, in the cases cited above, the Fifth Circuit has repeatedly said it affirmed the conviction without prejudice to the right of appellant to raise the issue ·of ineffective assistance of counsel in proper proceedings available to him, on occasion specifying the availability of a proceeding pursuant to 28 U.S.C. § 2255, *e.g., Prince, supra,* 456 F.2d at 1071. In such a proceeding,

appellant has a full opportunity to prove facts establishing ineffectiveness of counsel, the government has a full opportunity to present evidence to the contrary, the district court hears spoken words we can see only in print and sees expressions we will never see, and a factual record bearing precisely on the issue is created. If appeal be taken from the district court's judgment, an appellate court may decide on a record made on the precise issue. *See also United States v. Stephens,* 609 F.2d 230 (5th Cir.1980); *United States v. Prince,* 456 F.2d 1070 (5th Cir.1972); 'and *Ortega–Lira v. United States,* 406 F.2d 834 (9th Cir.), *cert. denied* 394 U.S. 964, 89 S.Ct. 1317, 22 L.Ed.2d 566 (1969). *Cf. United States v. Cronic,* 466 U.S. 648, 667 n. 42, 104 S.Ct. 2039, n. 42, 80 L.Ed.2d 657 (1984) and on remand following hearing, *United States v. Cronic,* 839 F.2d 1401 (10th Cir.1988) and *United States v. MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (where a preclusion disaffirmance of substantive decision was not considered by the United States Supreme Court). *See also United States v. Curtis,* 742 F.2d 1070 (7th Cir.1984), *cert. denied* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986); *United States v. Aulet,* 618 F.2d 182 (2d Cir. 1980); *Isble v. United States,* 611 F.2d 173 (6th Cir.'1979); and *Proffitt v. United States,* 582 F.2d 854 (4th Cir.1978).

sel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission. In all other cases the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission.

*See also People v. Wright,* 48 Cal.3d 168, 255 Cal.Rptr. 853, 768 P.2d 72 (1989); *In Re Cordero,* 46 Cal.3d 161, 249 Cal.Rptr. 342, 756 P.2d 1370 (1988), *opinion modified* (9/15/88); and *People v. Babbitt,* 45 Cal.3d 660, 248 Cal.Rptr. 69, 755 P.2d 253 (1988), *reh'g denied and opinion modified* (8/25/88), *cert. denied* — U.S. —, 109 S.Ct. 849, 102 L.Ed.2d 981 (1989).

A broad category of jurisdictions rely on the thesis that the first decision about ineffectiveness of trial counsel should be made by the trial court so that dependent on the jurisdiction, remand for consideration, motion for new trial or post-conviction-relief proceedings will be the process utilized in order that a factual record is developed. The Georgia court, in impressing habeas corpus to examine effectiveness of counsel, concludes:

> [W]e recognized the rule to be that "if appointed attorneys are so ignorant, negligent, or unfaithful that the accused was virtually unrepresented, or did not in any real or substantial sense have the aid of counsel, he would be deprived of a fundamental constitutional right, and if convicted might successfully complain that he had been denied due process of law."

*Wilcoxon v. Aldredge,* 192 Ga. 634, 15 S.E. 2d 873, 876 (1941) (quoting *Williams v. State,* 192 Ga. 247, 257, 15 S.E.2d 219, 225 (1941)). In quoting *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), that court reiterated:

> "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Con-

stitution." That decision appears to represent the weight of authority on this point, and we consider the ruling sound. *Wilcoxon,* 15 S.E.2d at 877. Waiver of right to adequate assistance of counsel did not apply. Wilkes, *Postconviction Habeas Corpus Relief in Georgia: A Decade After the Habeas Corpus Act,* 12 Ga.L.Rev. 249, 252 (1978), statutory habeas corpus, Ga. Code Ann. § 50–127 (Supp.1977), properly tests contentions of ineffective assistance of counsel; Wilkes, *A New Role for an Ancient Writ: Postconviction Habeas Corpus Relief in Georgia (Part I),* 8 Ga.L. Rev. 313, 360 (1974). Appeal waiver is not created. *Williams v. Hopper,* 243 Ga. 475, 254 S.E.2d 854 (1979); *Moore v. Ault,* 229 Ga. 616, 193 S.E.2d 813 (1972). *Cf. Richardson v. State,* 189 Ga.App. 113, 375 S.E. 2d 59 (1988), direct appeal after denial of a post-conviction motion for new trial, conviction reversed in finding of deficiency in per forma at trial; *Brooks v. State,* 187 Ga. App. 92, 369 S.E.2d 349 (1988); *Zant v. Hamilton,* 251 Ga. 553, 307 S.E.2d 667 (1983), *cert. denied* 466 U.S. 989, 104 S.Ct. 2371, 80 L.Ed.2d 843 (1984); and *Zant v. Dick,* 249 Ga. 799, 294 S.E.2d 508 (1982), *habeas corpus granted* 833 F.2d 1448 (11th Cir.1987). *See likewise,* Louisiana: *State ex rel. Busby v. Butler,* 538 So.2d 164, 167 (La.1988), "the underlying purpose of requiring effective assistance of counsel is to ensure a fair trial"; Missouri: *Pollard v. State,* 752 S.W.2d 380 (Mo.App.1988); and Tennessee: *Vermilye v. State,* 754 S.W.2d 82 (Tenn.Cr.App.1987). *See also McCloud v. State,* 77 Md.App. 528, 551 A.2d 151 (1989) and *Bonner v. State,* 765 S.W.2d 286 (Mo.App.1988).

In the District of Columbia, the present post-conviction process which may be used is a motion to recall mandate as attacking appellate counsel performance. *Watson v. United States,* 508 A.2d 75, *reh'g granted and judgment vacated* 514 A.2d 800 (1986), *reh'g* 536 A.2d 1056 (D.C.App.1987), *cert. denied* — U.S. —, 108 S.Ct. 1740, 100 L.Ed.2d 203 (1988). *Cf. State v. Williamson,* 206 Conn. 685, 539 A.2d 561 (1988) and *Miller v. United States,* 479 A.2d 862 (D.C.App.1984). In Connecticut, ineffectiveness issues are " 'more properly

pursued in a motion for new trial or on a petition for writ of habeas corpus than on direct appeal.'" *Williamson,* 539 A.2d at 570 (quoting *State v. Barber,* 173 Conn. 153, 154–55, 376 A.2d 1108 (1977)).

The rule is singularly logical as explained in *Williamson,* 539 A.2d at 571 (quoting *State v. Leecan,* 198 Conn. 517, 542, 504 A.2d 480, *cert. denied* 476 U.S. 1184, 106 S.Ct. 2922, 91 L.Ed.2d 550 (1986)) as compared to the preclusion forfeiture of Wyoming:

> "[W]e believe that his ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." * * * Although the defendant claims otherwise, our policy is supported by the circumstances of this case. An evidentiary hearing where the defendant's trial counsel can testify, for example, as to why no objections were made concerning the alleged prison clothes or why he did not move to strike the allegedly prejudicial answers from the state's rebuttal witness, as well as other claims the defendant makes, is necessary to evaluate the defendant's ineffective assistance claim. We decline to entertain that claim in this appeal.

Florida also follows a substantive review posture for post-conviction ineffectiveness of counsel review. *Eutzy v. State,* 536 So.2d 1014 (Fla.1988); *Chambers v. State,* 530 So.2d 452 (Fla.App.1988); *Cave v. State,* 529 So.2d 293 (Fla.1988); *Harris v. State,* 528 So.2d 361 (Fla.1988); *State v. Barber,* 301 So.2d 7 (Fla.1974). *See likewise, Stack v. State,* 492 A.2d 599 (Me. 1985). Louisiana also follows this obvious principle. The Louisiana Supreme Court states that "defendant's remedy is through post conviction relief in the trial court where the quality of the attorney's assistance can be fully developed and explored." *State v. Prudholm,* 446 So.2d 729, 737 (La.1984). *See also Ex Parte Dunn,* 514 So.2d 1300 (Ala.1987); *Ex Parte Daniel,* 459 So.2d 942 (Ala.1982); *Horsley v. State,* 527 So.2d 1355 (Ala.Cr.App.1988), *cert. denied* —— U.S. ——, 109 S.Ct. 1328, 103

L.Ed.2d 596 (1989); *Sandifer v. State,* 535 So.2d 203 (Ala.Cr.App.1987); *Delevie v. State,* 454 So.2d 1044 (Ala.Cr.App.1984); and *State v. Williams,* 535 So.2d 19 (La. App.1988).

A derivative of these rules is found with the determinant as the first proceeding after a different attorney is first involved to consider the sufficiency of his predecessor's legal performance. *Brooks,* 369 S.E. 2d 349; *Carter v. State,* 293 S.C. 528, 362 S.E.2d 20 (1987). A further adjunct separates cases by a consideration whether services were performed by private counsel or appointed public defender. *Griffin v. People of the State of Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, *reh'g denied* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480 (1956). *See however, State v. Kellogg,* 263 N.W.2d 539 (Iowa 1978).

The Pennsylvania rule is most emphatic in stating that the ineffectiveness of attorney allegation will not be considered for denial on appeal unless there is a clear and unrefutable evidence of incompetency on the face of that record. *Com. v. Davis,* 518 Pa. 77, 541 A.2d 315 (1988); *Com. v. Morocco,* 375 Pa.Super. 367, 544 A.2d 965, *appeal denied* 520 Pa. 615, 554 A.2d 508 (1988); *Com. v. Riggins,* 374 Pa.Super. 243, 542 A.2d 1004 (1988); *Com. v. Knapp,* 374 Pa.Super. 160, 542 A.2d 546 (1988); *Com. v. Felder,* 246 Pa.Super. 324, 370 A.2d 1214 (1976); *Com. v. Cook,* 230 Pa.Super. 283, 326 A.2d 461 (1974). *See also Com. v. Frey,* 520 Pa. 338, 554 A.2d 27 (1989). *See moreover, Com. v. Ely,* 381 Pa.Super. 510, 554 A.2d 118 (1989) (Rowley, J., dissenting). In Iowa, the cases recognize waiver as an issue available if ineffectiveness is not considered on first appeal, but further find cause in the nature of ineffectiveness claims on an insufficient record so that waiver is discarded in favor of substantive disposition in the post-conviction process. *State v. White,* 337 N.W.2d 517 (Iowa 1983); *Sims v. State,* 295 N.W.2d 420 (Iowa 1980); *Kellogg,* 263 N.W.2d 539; *Gavin,* 425 N.W.2d 673.

Idaho has a different derivation which applies res judicata whether there is an adequate record or not when the issue is

actually raised in first appeal. If not raised at that juncture, post-conviction relief remains available except that the cases create an unsettled doubt if the issue could have been and was not settled on first appeal upon an "adequate record" and no additional record was developed for post-conviction petition from which the ineffectiveness argument is factually developed. *Storm v. State*, 112 Idaho 718, 735 P.2d 1029 (1987); *Kraft v. State*, 100 Idaho 671, 603 P.2d 1005 (1979); *State v. Ruth*, 98 Idaho 879, 574 P.2d 1357 (1978); *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975); *State v. Kraft*, 96 Idaho 901, 539 P.2d 254 (1975), direct appeal.

Michigan, which is the only state technically without some defined post-conviction-relief process, provides for usage of either a motion for new trial or a motion to set aside the plea to accomplish a remand for hearing factually on claimed issues of ineffectiveness of counsel to develop a trial court record. *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973); *People v. Dalessandro*, 165 Mich.App. 569, 419 N.W.2d 609, *appeal denied* 430 Mich. 880, 423 N.W.2d 573 (1988). Indiana considers that waiver by non-inclusion in first appeal is subject to a fundamental error absolution for substantive consideration in post-conviction appeal. *Metcalf v. State*, 451 N.E. 2d 321 (Ind.1983). The process leads to substantive review at least to determine that an end run to res adjudicata is not attempted. *Schiro v. State*, 533 N.E.2d 1201 (Ind.1989); *Wickliffe v. State*, 523 N.E.2d 1385 (Ind.1988); *Lane v. State*, 521 N.E.2d 947 (Ind.1988); *Bailey v. State*, 472 N.E.2d 1260 (Ind.1985), *reh'g denied* (5/6/85); *Williams v. State*, 464 N.E.2d 893 (Ind.1984); *Metcalf*, 451 N.E.2d 321; *Dolan v. State*, 420 N.E.2d 1364 (Ind.App. 1981). *Cf. In Re Lee*, 246 Ind. 7, 198 N.E.2d 231, *reh'g denied* 246 Ind. 7, 201 N.E.2d 696 (1964).

Our other adjoining states generally follow the rule of federal courts and most state jurisdictions that ineffectiveness of counsel is not waived by counsel failure to present on first appeal as a preclusion by forfeiture. *State v. Cook*, 150 Ariz. 470, 724 P.2d 556 (1986); *State v. Carriger*, 143 Ariz. 142, 692 P.2d 991 (1984), *cert. denied* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985); *State v. Carriger*, 132 Ariz. 301, 645 P.2d 816 (1982); *People v. White*, 182 Colo. 417, 514 P.2d 69 (1973); *Lucero v. People*, 173 Colo. 94, 476 P.2d 257 (1970); *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985); *State v. Boyer*, 208 Mont. 258, 676 P.2d 787 (1984); *Gunter v. State*, 95 Nev. 319, 594 P.2d 708 (1979). *See also* admonition of proper process through post-conviction-relief petition, *State v. Valdez*, 160 Ariz. 9, 770 P.2d 313 (1989). *See also Larson v. State*, 614 P.2d 776 (Alaska 1980) and *State v. Morishige*, 65 Haw. 354, 652 P.2d 1119 (1982). In the following states, see: Alaska: *Fajeriak v. State*, 520 P.2d 795 (Alaska 1974); Hawaii: *Bryant v. State*, 720 P.2d 1015 (Hawaii 1986); Nevada: *Daniels v. State*, 100 Nev. 579, 688 P.2d 315 (1984); Oklahoma: *Coleman v. State*, 693 P.2d 4 (Okl.Cr.1984); Oregon: *Hedin v. Cupp*, 304 Or. 66, 742 P.2d 604 (1987); and Washington: *Petition of Jeffries*, 110 Wash.2d 326, 752 P.2d 1338, *cert. denied* — U.S. —, 109 S.Ct. 379, 102 L.Ed.2d 368 (1988). *See also State v. Reddick*, 230 Neb. 218, 430 N.W.2d 542 (1988); *State v. Propst*, 228 Neb. 722, 424 N.W.2d 136 (1988); and *Aliberti v. Solem*, 428 N.W.2d 638 (S.D.1988).

This general enumeration, which obviously does not identify more than a sample of the available case law, serves to delineate a strict first appeal forfeiture rule as now adopted by this majority to leave Wyoming standing alone. Substantively, there is very good reason for the broader perspective which denies usage of this estranged system in any other jurisdiction. First to appear as a fundamental concept by analysis in many jurisdictions is that a trial judge should initially consider the ineffectiveness claim. He can be expected to be more attuned to the occurrence and events if the claim arises from what occurred in the initial trial proceeding. Secondly, and as significant, is the consideration that for most ineffectiveness claims, there is initiating contentions of the client and responsive explanations by the attorney. Direct appeal preclusion affords no evidentiary con-

sideration of either but, more significantly, no elucidation of the second. This is a fundamental concept of the federal courts which seek the evidentiary record for a fair and thoughtful conclusion *based on the actual facts.*

Since ineffectiveness of counsel claims invade the essence of our system of justice as the right to effective counsel, summary disposition forfeiture mechanisms are inimicable to the broad concept of delivered justice. See Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Appellate and Post-conviction Remedies,* 15 A.L.R.4th 582 (1982); Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Post–Plea Remedies,* 13 A.L.R.4th 533 (1982); and Annotation, *Modern Status of Rules and Standards in State Courts as to Adequacy of Defense Counsel's Representation of Criminal Client,* 2 A.L.R.4th 27 (1980). As such, these shortcut processes which avoid reasoned decision are not inclined to often succeed. *Osborn,* 861 F.2d 612. This court should not try to repeal *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821, *reh'g denied* 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985) by subliminal constitutional readjustment. If the issue on ineffectiveness of counsel is real, it will continue to smoulder as *Harris,* 109 S.Ct. 1038 demonstrated. Conversely, if the claim is unjustified or clearly without merit, a quick substantive determination provides a validating atmosphere for the system and delivers adjudicatory efficiency.

Ineffective representation has proven to be a burgeoning problem in recent years, with a multiplicity of causes and a variety of ramifications. Two conflicting motivations distort the treatment of such claims on appeal. One, the desire to preserve convictions and limit the number of appeals, is totally inconsistent with the right to effective representation. Moreover, a hard-line approach does not eliminate frivolous cases because most claims are advanced with little regard for the likelihood of success. On the other side, use of the principles for reviewing ineffectiveness claims as a tool to improve the general quality of legal representation distorts the criminal justice system. Direct methods of improving the caliber of legal assistance are more efficient and effective.

Cosmic views of the shortcomings of our legal system should be avoided when an appellate court considers a claim for relief from conviction based on a denial of the right to effective representation. Courts should aim instead at a disposition of the individual case which is at once sensible and fair. A framework of carefully constructed legal principles is essential to achieving that goal. But cases are not disposed of by rules alone. The adjudication of an ineffectiveness claim is largely a matter of judging the facts of a particular case. Just as the defense of a criminal case is a complex process involving a myriad of decisions, judging an ineffectiveness claim on appeal requires sensitivity to and awareness of many different factors. Ineffectiveness is not only a matter of particular, identifiable errors. It often involves a systemic mediocrity which infects the entire defense. When and how that occurs may be difficult to determine. But the integrity of our judicial system rests, in many instances, on the ability of our appellate courts to arrive at an answer to that question.

Comment, *Ineffective Representation as a Basis for Relief From Conviction: Principles for Appellate Review,* 13 Colum. J.L. & Soc. Probs. 1, 89–90 (1977). The challenge is neither new nor newly discovered. See Waltz, *Inadequacy of Trial Defense Representation as a Ground for Post–Conviction Relief in Criminal Cases,* 59 N.W. U.L.Rev. 289 (1964).

I suggest that justice by formula and forfeiture simply is unacceptable today and an affront not only to the system but to the citizens of this jurisdiction. Realistically, in general concept, shortcuts in delivery of justice becomes self-destructive in a democratic society. Obviously, if a jurist is to realistically review the number of accruing appeals now presenting effectiveness of

counsel inquiry, it becomes apparent that persuasive merit is found in some and little or no justification in many. Forfeiture as now developed by this court will tend to confuse the no-merit cases and deny early justice for the meritorious. I really do not see why we cultivate what cannot productively grow in the adjudicative process as anything except a noxious weed. *Cf.* Greenhalgh, *The Assistance of Counsel Clause in the Year 2000,* 25 Crim.L.Bull. 86 (1989).

Clearly, a careful appellate attorney will now add ineffectiveness as a companion to stated issues on criminal cases to avoid both forfeiture and a follow-on complaint that he was the malefactor as the faultful attorney. Miller, *Effective Assistance of Counsel: A Defendant's Right to Competent Counsel is Precious, But Hard to Define,* 7 California Lawyer 23 (1987). The law is settled that ineffectiveness charges encompass mixed issues of fact and law. *Aliberti,* 428 N.W.2d 638. The Indiana court phrases the question to be "factually oriented." *Schiro,* 533 N.E.2d 1201. What is done here is to abrogate availability for the full development on appeal of the complete context of the issue for review. *Osborn,* 861 F.2d 612; Note, *State v. Smith: The Standard of Effectiveness of Counsel in Hawaii Following Strickland v. Washington,* 9 U.Haw.L.Rev. 371 (1987).

It is my conclusion that, by these decisions, all rights to the post-conviction-relief remedy of ineffectiveness of counsel complaints have been written out of this state's justice delivery system. Consequently, immediate resort by incarcerated persons to federal proceedings is now justified without challenge from claimed non-exhaustion. It really is the call to "let's go federal." If no relief is available, there is no exhaustion to consider. See D. Wilkes, *supra,* §§ 4–11 and 4–19, in discussing ineffective or inadequate remedies. See also L. Yackle, *supra,* §§ 65 and 66; Criminal Procedure, *Habeas Corpus and the Exhaustion Doctrine: Daye Lights Dark Corner of the Law,* 50 Brooklyn L.Rev. 565 (1984); and Annotation, *What Constitutes "An Opportunity for Full and Fair Litigation" in State Court Precluding Habeas Corpus Review Under 28 USCS § 2254 in Federal Court of State Prisoner's Fourth Amendment Claims,* 75 A.L.R. Fed. 9 (1985). *Cf. O'Halloran v. Ryan,* 835 F.2d 506 (3rd Cir.1987) and *Turner v. Compoy,* 827 F.2d 526 (9th Cir.1987), *cert. denied* —— U.S. ——, 109 S.Ct. 1327, 103 L.Ed.2d 595, *reh'g denied* —— U.S. ——, 109 S.Ct. 1770, 104 L.Ed.2d 205 (1989).

All of this seems somewhat strange since even in the denuded version of Wyoming's present post-conviction-relief statute, the following remains:

(a) A claim under this act is procedurally barred and no court has jurisdiction to decide the claim if the claim:

(i) Could have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction;

(ii) Was not raised in the original or an amendment to the original petition under this act; or

(iii) Was decided on its merits or on procedural grounds in any previous proceeding which has become final.

(b) Notwithstanding paragraph (a)(i) of this section, a court may hear a petition if:

(i) The petitioner sets forth facts supported by affidavits or other credible evidence which was not known or reasonably available to him at the time of a direct appeal; or

(ii) The court makes a finding that the petitioner was denied constitutionally effective assistance or counsel on his direct appeal. This finding may be reviewed by the supreme court together with any further action of the district court taken on the petition.

(c) This act does not apply to claims of error or denial of rights in any proceeding:

(i) For the revocation of probation or parole;

(ii) Provided by statute or court rule for new trial, sentence reduction, sentence correction or other post-verdict motion.

(d) No petition under this act shall be allowed if filed more than five (5) years after the judgment of conviction was entered.

W.S. 7–14–103.

Perhaps it is too simplistic to observe that the criminal client seldom is informed before appeal that his attorney made a significant mistake in trial. Likewise, the incarcerated individual in the state penitentiary without access to a record or transcript is singularly unable to accumulate knowledge of the adequacy with which his appellate counsel may have approached the ethical responsibility to be an advocate in his behalf. Time and competent evaluation are required to determine whether the appellate attorney seems to be bent on defending his co-worker in public agency or fellow member of the bar with whom he works or to realistically determine that significant errors have been committed in the legal performance by the licensed practitioner. The denigration of throwing rocks at glass houses is no less observable today in law than in past times when it appeared in a companion profession which was thoughtfully pursued by a multiple of observers and scholars as the "conspiracy of silence" for medical malpractice cases.

All of this is to say that any realistic application of the new post-conviction-relief statute which was intended to reduce access to constitutional evaluation of claimed counsel mistakes will still not logically or legally be accommodated within the waiver-forfeiture concept by which this case is determined. One can believe that no defense counsel, trial court nor prosecutor told Amin that an explicit violation of Wyoming law was occurring when examination of his wife without the protection of his immunity privilege was permitted. As a matter of fact, he probably did not even know that the defining case frequently cited in federal law had no relevance since related to a federal rule and totally distinguishable from Wyoming process where an explicit Wyoming statute existed.

It may well be that the trial time issues now claimed by Amin either lacked merit,

persuasive justification or constituted harmless error so that substantive disposition in a few page opinion might have properly` occurred. That opportunity for substantive review should be compared to the universe of issues raised by this present "shortcut" improvidently called procedural default as a forfeiture of constitutional rights derived, if existent, from incompetency or mistakes of participating attorneys.

It is not without some wisdom that an observer critiques the American characteristic to attempt "efficiency" shortcuts and only creates complicating expansive problems.

A philosophic overlay for this decision cannot be ignored. If the thesis is one to insulate trial courts and practicing attorneys from substantive evaluation of the competence of their performance, the justification is abysmally immoral. If the idea is to confine justice under the United States Constitution to state courts, it lacks content since inevitably, with the decrease in performance, an increase in observation by the federal judiciary will develop. If the idea is that a shortcut by procedural default simplifies resolution of constitutional issues, it just lacks common sense. This case is particularly bothersome because the majority cites a United States Supreme Court case which does not justify the decision made and attacks the effectiveness of counsel in neglect to include a claim of ineffectiveness of appellate counsel as an issue which was created by this court after briefing had, in itself for this case, been completed.

I would reverse the denial of an evidentiary hearing to Abdula Amin for consideration of the effectiveness of all his appointed counsel in trial and appeals.[13]

---

**13.** As Professor Tigar concluded in his well-honored writing of 1970:

From commanders of power both public and private we hear more and more stridently the claim that order must have primacy even over justice; by such an assertion is meant that the speaker prefers that the existing constellation of political and economic power be preserved. From alienated and dispossessed there comes an increasing insistence that the formal guarantees of fairness are primary, and there is a growing willingness to insist upon these guarantees militantly and even disruptively. In such a time, to speak of accommodation of order to justice becomes more and more beside the point, for in the real world they are more and more perceived in counterposition. The causes of and prospects for this increasing tension must be debated elsewhere. But it should be clear that our discussion of the criminal process treads close upon the fundamental social issues of our time. To have neglected this truth, through abstraction, heedlessness, or forejudgment, should be the occasion of regret. Tigar, *The Supreme Court 1969 Term, Foreward: Waiver of Constitutional Rights: Disquiet in the Citadel,* 84 Harv.L.Rev. 1, 28 (1970).